38 A.3d 352

Anthony GRANDISON

v.

STATE of Maryland.

No. 117, Sept. Term, 2010.

Court of Appeals of Maryland.

Feb. 22, 2012.

36

**38**

Bradford C. Peabody, Assistant Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for Appellant.

James E. Williams, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Appellee.

Argued before BELL, C.J., HARRELL, GREENE, ADKINS, LAWRENCE F. RODOWSKY (Retired, Specially Assigned), IRMA S. RAKER (Retired, Specially Assigned), and ALAN M. WILNER (Retired, Specially Assigned), JJ.

ADKINS, J.

In his sixth journey to the Court of Appeals, Anthony Grandison, a prisoner on death row for his role in a pair of 1983 murders, presents various requests for relief.[1] His previous appeals have resulted in one order denying an appeal and four published opinions, the latest in 2005.[2] Since this

---

1. Grandison was convicted of first degree murder in 1984 for orchestrating the slaying of two people.

2. Previous published opinions are: *Evans [and Grandison] v. State,* 301 Md. 45, 481 A.2d 1135 (1984) (*"Grandison I"*); *Grandison v. State,* 305 Md. 685, 506 A.2d 580 (1986) (*"Grandison II"*); *Grandison v. State,* 341 Md. 175, 670 A.2d 398 (1995) (*"Grandison III"*); *Grandison v. State,* 351 Md. 732, 720 A.2d 322 (1998) (*"Grandison IV"*); 390 Md. 412, 889 A.2d 366 (2005) (*"Grandison V"*).

Court last ruled on Grandison's case, he has made numerous motions to keep the case active in the Maryland courts, and he has fired several lawyers during the pendency of those motions. The Circuit Court for Somerset County ("Circuit Court") evaluated his motions: (1) to reopen postconviction proceedings; (2) to correct an illegal sentence; (3) for a new resentencing hearing or, alternatively, to file a belated appeal; and (4) for a new trial. After consideration, the Circuit Court dismissed the motions and denied Grandison relief.

Meanwhile, the Circuit Court granted his motion to fire two appointed attorneys from the Office of the Public Defender, and he proceeded *pro se* for part of the aforementioned collateral proceedings.[3] Now, Grandison argues that he had a right to counsel for those proceedings, and has requested that he be appointed counsel by the Office of the Public Defender, so that he may go back and litigate the denied collateral claims with the benefit of counsel.

Grandison also appealed the denial of the motions, on the merits, to the Court of Special Appeals, which transferred the case to this Court on December 15, 2010.[4]

Grandison presents nine questions for our review:

1. Was Appellant deprived of his right to counsel, in a capital case, after he filed various motions seeking a new trial, a reopened post conviction, or a new sentencing?

2. Where Appellant was entitled to a hearing on the question of whether the State engaged in racial discrimination in exercising peremptory strikes, and where his appellate counsel failed to make that argument, did the court below

---

**3.** After Grandison fired his attorneys, the Office of the Public Defender did not appoint new counsel to aid him in pursuing his collateral motions. He was appointed counsel, for this appeal, by the Public Defender on or about April 25, 2011.

**4.** In making this transfer, the Court of Special Appeals cited Maryland Code (1999, 2006 Repl.Vol.), Section 12–307(4) of the Courts and Judicial Proceedings Article, which provides that the Court of Appeals has "[e]xclusive appellate jurisdiction over a criminal case in which the death penalty is imposed[.]"

err in failing to rule on whether his post conviction should be opened for consideration of those issues?

3. Should the rule of evidence announced in *Crawford v. Washington* be applied retroactively in Maryland?

4. From the pre-marking of two mitigating circumstances on the sentencing form, could the jurors have inferred a finding by the Court that only two mitigating circumstances existed or merited serious consideration?

5. Should Appellant have either a new resentencing or a belated appeal, where a letter that was not admitted into evidence was sent to the jury and characterized by the State as a critical piece of evidence?

6. At Appellant's 1984 trial, was the jury instruction on reasonable doubt plain error?

7. Do the constitutional prohibitions against ex post facto laws preclude the retroactive application to Appellant of any new execution regulations?

8. Was it an abuse of discretion to deny the motion for new trial?

9. Was the death sentence illegal, where the aggravating circumstance occurred after the murders had already been committed?

The State has moved to dismiss Questions Two, Three, Four, and Six. For reasons explained below, we shall deny the State's motion to dismiss these four questions. We shall also hold that Grandison did not have a right to counsel during the collateral proceedings. We shall affirm the denial and dismissal of Grandison's motions by the Circuit Court.

### Facts and Legal Proceedings

Grandison's case was most recently before this Court in *Grandison V.*[5] By way of introduction, in that case we described much of the early procedural history of this matter:

---

[5] Grandison first came before us on an appeal of an interlocutory order, in which the trial court denied his motion to dismiss the charges before him on federal constitutional grounds. *See Grandison I*, 301 Md.

The appellant, Anthony Grandison, was convicted of hiring Vernon Evans, Jr. to murder David Scott Piechowicz and Cheryl Piechowicz on April 28, 1983 at the Warren House Motel located in Baltimore County, Maryland; however, because Ms. Piechowicz was ill, her sister, Susan Kennedy, who was filling in for her, was murdered in her stead. Grandison was convicted of first degree murder of both victims and was sentenced to death. This Court has, in four previous opinions, rejected Grandison's various challenges to his trial, convictions, and sentences.

*Grandison V,* 390 Md. at 416, 889 A.2d at 368. This Court also summarized some of the previous opinions, which we present here once again:

On November 1, 1990, Grandison filed a petition, pursuant to Md.Code (1957, 1987 Repl.Vol., 1990 Cum.Supp.), Art. 27, § 645A, in the Circuit Court for Somerset County seeking post conviction relief. On July 31, 1992, the circuit court granted such relief, ordering a new capital sentencing proceeding on Grandison's convictions of first degree murder. Relying upon the Supreme Court's decision in *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), the circuit court granted the requested relief on the grounds that the sentencing form and related jury instructions employed at Grandison's first sentencing proceeding offended the dictates of the Eighth and Fourteenth Amendments to the United States Constitution that the death penalty not be imposed where there are mitigating factors which may call for a less severe penalty. The circuit court also decided that Grandison was entitled to retroactive application of the *Mills* decision. The State applied to this Court for leave to appeal from the circuit court's grant of post conviction relief as to the death sentences, and Grandison filed a cross-application seeking review of the circuit court's denial of collateral relief on the underlying convictions. We denied both applications. *Grandison v. State,*

---

at 49, 481 A.2d at 1137. Then came a direct appeal of his murder conviction. *See Grandison II,* 305 Md. at 696, 506 A.2d at 585.

Misc. No. 29, Sept. Term 1992 (order filed October 23, 1992). The Supreme Court denied a petition and cross-petition for writ of certiorari on March 22, 1993. *Maryland v. Grandison*, 507 U.S. 985, 113 S.Ct. 1581, 123 L.Ed.2d 149 (1993); *Grandison v. Maryland*, 507 U.S. 985, 113 S.Ct. 1581, 123 L.Ed.2d 149 (1993).

In 1993, Grandison filed a number of motions in the circuit court to bar his re-sentencing on double jeopardy grounds. The circuit court denied these motions and Grandison's subsequent request for a stay of the re-sentencing proceeding pending an appeal of the circuit court's ruling on his motions. Grandison then applied to the Court of Special Appeals for a stay of the re-sentencing. On May 11, 1994, the matter was transferred to this Court. We issued an order denying the requested stay. *Grandison v. State*, Misc. No. 20, Sept. Term, 1994 (order filed May 12, 1994).

\* \* \*

Grandison's re-sentencing proceeding began on May 24, 1994 and lasted eight days. The prosecution presented the same evidence that it had introduced at Grandison's guilt/innocence trial including testimony from Cheryl Piechowicz, Charlene Sparrow, James Savage, and Calvin Harper, which was essentially identical to their testimony in the 1984 trial. The State also introduced testimony from Janet Moore for the first time during the re-sentencing proceeding. Moore's testimony corroborated the statements made by Sparrow regarding the events of the two days immediately prior to the murders. She also stated that she heard Grandison tell Kelly to take Evans to the Warren House and show him "who the white couple was." At the conclusion of Grandison's capital re-sentencing proceeding, on June 3, 1994, a Somerset County jury imposed two death sentences. This Court affirmed the death sentences in [*Grandison III* ].

Id. at 420–21, 889 A.2d at 370–71.

Grandison then filed a petition for postconviction relief in the Circuit Court, which eventually denied relief. This Court denied Grandison's application for leave to appeal and his

motion to reconsider denial of his application for leave to appeal. *See Grandison IV*, 351 Md. at 732, 720 A.2d at 322. Grandison also petitioned for federal habeas relief, which was denied. *See generally Grandison v. Corcoran*, 78 F.Supp.2d 499 (D.Md.2000), *appeal dismissed at* 225 F.3d 654 (4th Cir. 2000), *cert. denied* 532 U.S. 996, 121 S.Ct. 1658, 149 L.Ed.2d 640 (2001).

Beginning in 1999, Grandison filed several motions in Circuit Court, including a motion for a new trial, motion to correct an illegal sentence, and a *pro se* motion to reopen postconviction proceedings. *See Grandison V*, 390 Md. at 421, 889 A.2d at 371. The Circuit Court held evidentiary hearings and then denied Grandison's motions in their entirety. *See id.* at 422, 426–27, 889 A.2d at 372, 374. This Court affirmed those denials. *Id.* at 448, 889 A.2d at 387.

### Continued Motions

After we decided *Grandison V*, Grandison's pursuit of further relief continued unabated. He first filed a motion on February 3, 2006, to reopen his postconviction proceedings, in which he argued that: (1) several items in the State's evidence were deficient under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); (2) the trial court had erroneously pre-marked mitigating factors on a jury sentencing form; and (3) he received ineffective assistance of counsel.

Grandison concomitantly filed a Motion to Correct an Illegal Sentence, in which he made the same arguments about evidence under *Crawford*, the jury sentencing form, and ineffective assistance of counsel. Shortly thereafter, he filed an "Addendum to Motion to Reopen Post–Conviction Proceedings and Request for Hearing and Discovery." In this addendum, he alleged statewide racial bias and discriminatory prosecution with respect to the death penalty. The State answered all three motions.

Next, Grandison filed a Second Addendum to his motion to reopen the postconviction proceedings; an Addendum to his motion to correct the illegal sentence; and a supplement to his

previously filed claim about racial bias. This was only the beginning. The record also reflects, *inter alia*, the following activity by Grandison:

- Four motions filed March 1, 2007:(1) An ex parte motion to withdraw counsel of record; (2) a motion for a new resentencing hearing or, alternatively, to file a belated appeal; (3) a motion for a new trial; and (4) a motion to correct an illegal sentence.
- Another motion to correct an illegal sentence, filed March 16, 2007.
- A combined motion for a new trial and motion to reopen postconviction proceedings, filed August 9, 2007.
- A motion, filed October 24, 2007, claiming that the State's failure to answer old motions required the court to grant them.
- A motion for an evidentiary hearing on previous motions, filed May 27, 2008.

Resolving all the unsettled issues before it, the Circuit Court distilled everything raised in the pending motions and related hearings [6] into four avenues of relief sought by Grandison. In a memorandum opinion on September 1, 2010, the court denied relief.

First, the Circuit Court addressed Grandison's motion to reopen postconviction proceedings. The court analyzed this motion on five points:

Grandison contends the Court incorrectly admitted into evidence:

1. Reports of [his] behavior within the institution,

2. Victim impact statements,

3. The doctor's statement concerning Helen Kondilidis's grave health,

and erred when it:

---

6. Proceedings were held on July 3, 2007; September 5, 2008; June 30, 2009; and April 26, 2010. These will be discussed in further detail below, as each bears on Grandison's interactions with various counsel.

4. Pre-marked the mitigators in Grandison's favor on the sentencing form, and,

5. Failed to prevent the systematic exclusion of African–American jurors.

After analyzing all five issues, the Circuit Court denied Grandison's motion to reopen postconviction proceedings across the board. Each of these five issues is now before us: Issues 1–3 are now presented as Question Three; Issue 4 is now presented in Question Four; and Issue 5 is presented in Question Two.

Second, the Circuit Court addressed Grandison's motion to correct an illegal sentence. Grandison made two arguments in support of this motion: (1) that the death sentence was illegal because the aggravating circumstances leading to Grandison's death sentence happened after the murders had already been committed; and (2) that the death penalty has been illegal in Maryland since 2006. The Circuit Court addressed the merits of these arguments and denied Grandison's motion to correct an illegal sentence. Issue 1 is now presented to this Court as Question Nine, and Issue 2 is now presented to us, in moderately different form, as part of Question Seven.

Third, the Circuit Court addressed Grandison's motion for a new resentencing hearing. Grandison offered three arguments in support of this motion: (1) he was entitled to litigate the admissibility of State's Exhibit 21; (2) the trial court's reasonable doubt instruction during his 1984 trial was improper; and (3) he received ineffective assistance of counsel. The Circuit Court addressed the merits of these arguments and denied his motion. Issue 1 is now presented to this Court as Question Five; Issue 2 is presented as Question Six; and Issue 3 is not before us.

Lastly, the Circuit Court addressed Grandison's motion for a new trial. The court summarized Grandison's argument in support of this motion:

1. The State used perjured testimony of Cheryl Piechowicz and James Savage,

2. The State knowingly suppressed exculpatory evidence that showed Etta Horne, Charlene Sparrow, and Helen Kondilidis committed perjury, and

3. The mental [disorder] of Helen Kondilidis at the time of the 1984 trial [was undisclosed].

Again, the court addressed the merits of each of these arguments and denied the motion. These three arguments are now before us, presented as Question Eight.

The Circuit Court concluded: "Accordingly, after full and fair consideration of the arguments of the parties, this Court finds that, for the reasons mentioned, it is ORDERED that, any and all relief requested by Movant Anthony Grandison is hereby DENIED and DISMISSED."

### Grandison's Counsel

From his 1984 trial through 2007, Grandison changed attorneys multiple times, largely at his own initiative. During this period, he was represented by more than a dozen attorneys. In February 2007, his counsel of record were Gary E. Proctor and Michael E. Lawlor, each appointed by the Public Defender. In a letter to the Circuit Court on or about February 28, 2007, Grandison filed an ex parte motion to withdraw counsel of record. Grandison then wrote a letter to the Circuit Court on April 18, 2007, expressing his continued desire to proceed without appointed counsel.

Proctor then wrote to the Circuit Court, saying he had spoken with the head of the Capital Division of the Office of the Public Defender. Proctor stated that, in the event he and Lawlor were discharged as counsel, the Public Defender would not appoint other counsel to represent Grandison. In response to this letter, Grandison wrote to the Circuit Court and said "I do not want either Mr. Proctor or Mr. Lawlar [sic] to act in my behalf in any capacity, and will not accept either under any circumstances as standby counsel."

The Circuit Court held a heading on July 3, 2007, to determine "[1] whether or not the Court will allow ... Grandison to discharge counsel ... [2] whether or not the request to

discharge counsel is meritorious ... [and] [3] whether or not it's appropriate to appoint counsel or to request a public defender to proceed further with appointed counsel." The record reflects the following exchange between the court and Proctor:

The Court: What is your position with respect to continuing to represent Mr. Grandison?

Mr. Proctor: If Mr. Grandison—I've got enough clients that want my help, without forcing myself on someone who doesn't. I have no objection to Mr. Grandison's motion. I don't think there's cause. And in good [conscience], I can't stand in front of this Court and represent that I should have done things that I haven't. I think I've provided him with effective assistance throughout, but neither do I want to force myself on him, so I have no objection to his motion to fire me, basically. That's fine.

The Court: Would you be prepared to continue if he agreed to allow you to continue?

Mr. Proctor: Yes, I would.

The Court: Are you prepared to prosecute the motions?

Mr. Proctor: The motions I file, yes, and—of which I think 90 percent will agree with the motions Mr. Grandison wants to file. We'll just lock heads over a few issues, I'm sure. But, you know, I believe in Mr. Grandison's right to counsel. I want him to have his day in court. If he withdraws his motion, I'll continue to represent him to the best of my ability.

Lawlor testified:

The truth of the matter is, is that Mr. Grandison's motions are ridiculous and frivolous and insulting, but it's his choice. It's his life. As Mr. Proctor said, I am not going to beg and plead to work in my office and not spend time with my wife and not work on my other cases to an individual who doesn't want my representation. I would stay. I will stay. I undertook the representation knowing what it entails.

Grandison spoke as well:

48

The Court: What else do you want to say in response to either something that Mr. Proctor said or Mr. Lawlor said? Do you want them to continue to represent you?

Mr. Grandison: No, definitely not.

The Court: Do you want to discharge them?

Mr. Grandison: Yes, sir.

Grandison was also advised that "the public defender may not appoint additional counsel" were he to discharge Proctor and Lawlor. In response, Grandison said, "that's a bridge I'll have to cross, you know what I'm saying, when I get there." The State then said that Grandison had not shown "good cause" to discharge Proctor and Lawlor.

The Court made its ruling:

I will allow Mr. Grandison to discharge counsel, Mr. Proctor and Mr. [Lawlor]. The Court has fully and fairly considered the arguments and the pleadings and the correspondence. The Court finds that there is no meritorious reason for discharge of counsel, but will allow the same to occur.

Grandison appeared again in Circuit Court, this time *pro se,* on September 5, 2008. At this hearing, Grandison said, "I wish counsel," but also stated that he had requested counsel from the public defender's office and had not received a response. Grandison averred that he was prepared to represent himself on his request for an evidentiary hearing, and the Circuit Court heard his argument. The court denied the motion. When the hearing concluded, the court said:

Given the nature of this case I'm willing to give you one more shot at getting counsel. I will tell you I think it's probably an exercise in futility based on my previous experience in eighteen years with Mr. Grandison, but I'm willing to allow him the opportunity to get counsel and continue this case for a short period of time.

The Circuit Court also requested that Grandison submit a letter within sixty days advising the court about his efforts to secure counsel.

On or about December 15, 2008, Grandison filed a *pro se* motion for appointment of counsel. At a hearing on June 30, 2009, Grandison had not secured counsel.

At this hearing, the Court also mentioned:

[T]he Court received a letter from Nancy Forster who is the Public Defender who indicated to the Court that the Public Defender would not provide counsel .... [quoting from letter:] "I will not authorize the appointment of another attorney from the Office of the Public Defender to represent Mr. Grandison in any further proceeding."

The Circuit Court continued the case for 120 days to afford Grandison the opportunity to find counsel, adding:

if representation does not come forward within that ... period and there is not a reasonable request for a continuance from counsel who may enter an appearance for Mr. Grandison[,] whatever date we decide this case is going to be heard[,] the Court is not going to do anything further with respect to securing counsel.

At a fourth hearing on April 26, 2010, the judge and Grandison discussed his various attempts to obtain counsel. Grandison mentioned he had sent letters to various attorneys suggested by the Circuit Court. Grandison had received a letter from the Death Penalty Representation Project, saying that group would be unable to represent him. The judge also stated that he had reached out to various pro bono practices at firms, without success. The judge indicated he had contacted several law professors in an attempt to procure counsel, also without success.

After some discussion of a recently decided case, *Office of the Public Defender v. State*, 413 Md. 411, 993 A.2d 55 (2010) ("*OPD* "), the Circuit Court made the following ruling:

[T]he Court is not persuaded that [*OPD* ] requires the Court under the facts of this case to order the Public Defender to provide counsel for you, Mr. Grandison.

And given the reasons that Ms. Forster[,] who was then the Public Defender[,] gave for declining to provide representation previously[,] the Court believes that the Rules and the

case law do not require that counsel be appointed at State expense for these proceedings. And notwithstanding what I just said[,] the Court has ... on several occasions ... continued this case because the Court believes it's important that Mr. Grandison have representation if representation is available and willing to provide advice and counsel to him. The Court has made efforts beyond what I think is required of the Court in order to find representation for Mr. Grandison unsuccessfully.

At trial twice the Court is aware[,] because I was at one of those trials[,] that Mr. Grandison[,] because of disagreements with his attorneys[,] discharged them and proceeded pro se. And, accordingly, the Court is going to deny the motion to appoint counsel.

Now, what's interesting in looking back the last few days through these motions[;] most if not all of the motions that were filed[,] even though it's filed by counsel who may have been representing Mr. Grandison at the time[,] were his product. The Court is mindful of and respects Mr. Grandison's ability to understand and argue the issues. And once again the motion for appointment of counsel is denied.

### Motion to Dismiss

■ The State moved to dismiss Questions Two, Three, Four, and Six in this case on procedural grounds. The State directs us to several statutory provisions and rules to support its dismissal. First, the State cites Section 7–109(a) of the Criminal Procedure Article, which requires that an appeal of postconviction proceedings begin with an application for leave to appeal. Md.Code (2001, 2008 Repl.Vol.), § 7–109(a) of the Criminal Procedure Article. Although this section provides that "person[s] aggrieved by" a postconviction order "may apply to the Court of Special Appeals for leave to appeal the order," we have said that Section 2–401 of the Criminal Law Article, "when construed in conjunction with [Section 7–109(a) of the Criminal Procedure Article], provides for direct review by this Court of any proceedings in a case where the death penalty has been imposed." *Johnson v. State*, 292 Md. 405,

435–36 n. 16, 439 A.2d 542 (1982). We also adopted Maryland Rule 8–306, which "applies to . . . an application for leave to appeal from a judgment granting or denying relief in a post conviction proceeding brought to review a judgment imposing a sentence of death," and directs that the application for leave to appeal to the Court of Appeals be made "by filing the application with the Clerk of the Court of Appeals." Md. Rule 8–306(a), (e)(1).

As the State argues, "Grandison has never filed an [application for leave to appeal] after his motions to reopen post conviction were denied; rather, he filed what was tantamount to a direct appeal, through a pleading captioned: 'Notice of Appeal.' " The State's argument proceeds:

> [Rule 8–306] provides that Maryland Rule 8–204 "applies to all applications for leave to appeal subject to this Rule[.]" Md. Rule 8–306(e) (2011). Grandison's "Notice of Appeal" did not provide, in any conceivable way, the content required by Maryland Rule 8–204 for [applications for leave to appeal]: "The application shall contain a concise statement of the reasons why the judgment should be reversed or modified and shall specify the errors allegedly committed by the lower court." Md. Rule 8–204(b)(3) (2011).

Because of this failure to file an application for leave to appeal or provide the content required by the rule, the State urges us to dismiss issues II, III, IV, and VI, as "procedurally defaulted."

Grandison counters that "the Court of Special Appeals, on its own motion, routinely treats an 'appeal' filed by an indigent defendant, *pro se,* as an 'Application for Leave to Appeal,' where the latter is the correct pleading, thereby affording the appellant (applicant) an opportunity to provide reasons for granting the application." Grandison directs our attention to a footnote in *State v. Daughtry,* 419 Md. 35, 44 n. 4, 18 A.3d 60, 65–66 n. 4 (2011), in which this Court mentioned a "Notice of Appeal, which the Court of Special Appeals docketed as an Application for Leave to Appeal."

Grandison argues that this Court "explicitly noted [the] routine practice, apparently with approval." Without question, the Court of Special Appeals has sometimes treated a Notice of Appeal as an Application for Leave to Appeal. *See, e.g., Miller v. State,* 185 Md.App. 293, 295, 970 A.2d 332, 333 (2009) ("The appellant filed a timely notice of appeal, which this Court treated as an application for leave to appeal[.]"); *Bagley v. Warden,* 1 Md.App. 154, 158, 228 A.2d 491, 492 (1967) (treating the document "designated by applicant as a 'Notice of Appeal' " as an "application for leave to appeal"). This practice likely prevails in any number of unreported opinions. At least one reported case, however, has required strict compliance with the dictates of Rule 8–204. *See, e.g., Britton v. State,* 201 Md.App. 589, 595, 30 A.3d 236, 239 (2011) ("Because appellate review of a guilty plea may only be obtained by an application for leave to appeal and because appellant's notice of appeal lacked sufficient content to be deemed the substantive equivalent of an application for leave to appeal, this Court dismissed his appeal."). We view the decision as to whether an appellate court will require strict compliance with the terms of Rules 8–204 or 8–306 to be discretionary. In this death penalty case, in which the defendant was unrepresented at the time he filed what should have been termed an "application for leave to appeal," we elect to consider the arguments he raises, notwithstanding this procedural deficiency. *Cf. Doering v. Fader,* 316 Md. 351, 360, 558 A.2d 733, 738 (1989) ("The penalty of death 'is qualitatively different from a sentence of imprisonment, however long[.]' " (quoting *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976))).

## Question One: Right to Counsel

■ Grandison argues that he "was deprived of his right to counsel, in a capital case, after he filed various motions seeking a new trial, a reopened post conviction, [and] a new sentencing." Grandison draws our attention to *State v. Walker,* 417 Md. 589, 11 A.3d 811 (2011), in which we quoted a case that "summarized aptly the right of a defendant in a criminal

case to the assistance of counsel," *id.* at 596–97, 11 A.3d at 816.

> The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence. The Due Process Clause of the Fourteenth Amendment guarantees the same right to the assistance of counsel, including the right to the appointment of counsel in the case of the indigent defendant, in state criminal prosecutions[.]

> Central to the cases dealing with the right to counsel is the recognition that the assistance of a lawyer is essential to assure a fair trial[.]

> Consequently, because essential fairness is lacking if an accused cannot put his case effectively in court . . . and because it is unlikely that an accused will be able to present his case effectively without the assistance of counsel, a conviction cannot be allowed to stand where the accused is not represented at trial by counsel unless it be determined that there was an intelligent and competent waiver by the accused[.] To assure protection of so fundamental a right, courts indulge every reasonable presumption against waiver . . . and do not permit waiver to be presumed from a silent record[.] It must appear affirmatively on the record that the accused was offered counsel but intelligently and understandingly rejected the offer. (Citations and quotation marks omitted.)

*Id.* In *Walker*, however, the defendant represented herself at trial, and we were faced with a direct appeal of her conviction. *Id.* at 595–96, 11 A.3d at 815. As the State observes, Grandison has not lodged this appeal from his conviction at trial. These proceedings are collateral matters, all filed years after Grandison's initial trial and sentencing, and indeed, after other collateral proceedings. Different standards apply to these proceedings, and *Walker* and the principles utilized therein are not applicable here.

Grandison makes several arguments in support of his claim. He directs our attention to *Sites v. State*, in which this Court held that although a person apprehended for driving while intoxicated has no statutory or Sixth Amendment right "to consult counsel before deciding whether to submit to a chemical sobriety test," that right is protected by the due process clause of the Fourteenth Amendment and the Maryland Declaration of Rights. *Sites v. State*, 300 Md. 702, 707, 717, 481 A.2d 192, 194, 199 (1984). As we explained:

> The due process clause of the Fourteenth Amendment has long been recognized as a source of a right to counsel independent of the Sixth Amendment where critically important to the fairness of the proceedings. We recognized in *Rutherford v. Rutherford*, 296 Md. 347, 358, 464 A.2d 228 (1983) that the constitutional right to counsel is broader than the specific guarantee of the Sixth Amendment and Article 21 of the Maryland Declaration of Rights in that, under certain circumstances, the requirements of due process include a right to counsel, with appointed counsel for indigents, in civil cases or other proceedings not constituting critical stages of criminal trials. The concept of a due process right was described as far back as *Palko v. Connecticut*, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937) as a guarantee of respect for those personal immunities which are so rooted in the traditions and conscience of our people as to be ranked as fundamental or implicit in the concept of ordered liberty. While the exact contours of the due process right are not definable with precision, the right, as restated in *Rochin v. California*, 342 U.S. 165, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952), is one that assures that convictions cannot be brought about in criminal cases by methods which offend a sense of justice. (Citations and quotation marks omitted.)

*Id.* at 716, 481 A.2d at 199. Grandison argues that it would indeed "offend a sense of justice" for courts to find that he may not have counsel appointed for a motions hearing in a death penalty case, but that he may have counsel appointed before this Court, immediately thereafter, for an appeal from

rulings made at that hearing. He also argues that it would also offend a sense of justice "if the right to appointed counsel were more freely extended to one facing probation for drunk driving[ ] than to one facing execution for murder."

Keeping in mind the unique nature of capital cases, we still are not persuaded by Grandison's argument on this issue. First, the decision by the Public Defender to provide Grandison with representation for this appeal does not mean that he has a constitutional or statutory right to such representation. Second, in *Sites,* our primary concern was that "**convictions** cannot be brought about in criminal cases by methods which offend a sense of justice." *Id* (emphasis added). Here, Grandison's conviction and direct appeal thereof have long since passed, and he has been represented by counsel for several postconviction proceedings. Any argument that Grandison must have counsel for these collateral motions is further muted by the U.S. Supreme Court's holding in *Pennsylvania v. Finley:*

> We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals.
>
> \* \* \*
>
> Postconviction relief is even further removed from the criminal trial than is discretionary direct review. It is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature. It is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction. States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well. (Citations omitted.)

*Pennsylvania v. Finley,* 481 U.S. 551, 555–57, 107 S.Ct. 1990, 1993–94, 95 L.Ed.2d 539 (1987).

This Court's previous interpretations of the Maryland Declaration of Rights paint a similar picture:

> The Maryland Constitution has not hitherto been interpreted to provide a right to counsel in collateral proceedings challenging a criminal conviction. Article 21 of the Maryland Declaration of Rights provides that "in all criminal prosecutions, every man hath a right ... to be allowed counsel ..." This Court has held that Article 21 of the Maryland Declaration of Rights does not afford any right to counsel which is more expansive than that afforded by the Sixth Amendment. *See State v. Campbell,* 385 Md. 616, 626 n. 3, 870 A.2d 217, 223 n. 3 (2005) (stating that the right to counsel provisions in Article 21 are in [*pari materia* ] with Sixth Amendment); *State v. Tichnell,* 306 Md. 428, 440, 509 A.2d 1179, 1185 (1986) (holding that "[t]here is no distinction between the right to counsel guaranteed by the Sixth Amendment and Art. 21 of the Maryland Declaration of Rights").

*Blake v. State,* 395 Md. 213, 235, 909 A.2d 1020, 1033 (2006). Grandison asks us to recognize rights that simply do not exist. Grandison's analogy to the drunken driving cases is also unpersuasive, as he was represented by counsel throughout his criminal trial, direct appeal, resentencing, and first set of postconviction proceedings.

Grandison also attempts to use selective citation of rules and statutes to bolster his claim. He first cites Maryland Rule 4–214(b), which provides that "[w]hen counsel is appointed by the Public Defender or by the court, representation extends to all stages in the proceedings, including but not limited to" the post-trial motions and other legal proceedings enumerated in Rule 4–214(b). The final sentence of Rule 4–214(b), however, conspicuously absent from his brief, provides: "The representation of appointed counsel does not extend to the filing of subsequent discretionary proceedings including

petition for writ of certiorari, petition to expunge records, and petition for post conviction relief."

■ The statutory framework offers no help to Grandison either. First, the Uniform Postconviction Procedure Act exempts such motions from the right to counsel. It provides:

> (a) *In general.*—Except as provided in subsection (b) of this section, "a person is entitled to assistance of counsel [in a postconviction proceeding.]
>
> (b) *Exceptions.*—If a person seeks to reopen a postconviction proceeding under § 7–104 of this subtitle, the court shall determine whether assistance from counsel . . . should be granted.

Maryland Code (2001, 2008 Repl.Vol.), § 7–108(a)–(b)(1) of the Criminal Law Article. Thus, the Act grants the right to counsel in postconviction proceedings, except that in a request to reopen, the court shall determine whether assistance from counsel should be given. This is exactly what the Circuit Court did in this case. The passages from the Circuit Court proceedings that we quoted earlier demonstrate that the Circuit Court considered whether the law required the appointment of counsel, and decided there was no such requirement. We affirm that decision. As the State argues, the statute that empowers and defines the rights and obligations of the Office of the Public Defender "does not contemplate the extension of counsel to collateral attacks so far removed from a defendant's conviction, direct appeal, or state post conviction proceeding such as the challenges Grandison brings here."

Grandison merely asserts that because this is a capital case, the Circuit Court abused its discretion, under section 7–108, by having him proceed *pro se.* If anything, the Circuit Court went to considerable length to attempt to secure counsel for Grandison, even though it was under no obligation to do so. As the State correctly points out, the Circuit Court's failure to secure counsel for Grandison on these motions does not "render the lower court's efforts erroneous or an abuse of discretion." The Circuit Court's effort to help Grandison find counsel for these collateral proceedings did not spawn an

affirmative right for Grandison to have counsel. Grandison's previous treatment and dismissal of various counsel appointed for him likely plagued his and the Circuit Court's efforts to secure counsel for him at the hearing in this case. That is Grandison's own doing, and he must suffer the consequences.

Grandison also seeks support from our decision in *OPD*. We summarized the question presented in that case and answered it:

> In the present case, we must determine whether a Maryland trial court possesses the authority, statutory or otherwise, to appoint an attorney from a local Office of the State Public Defender ("OPD") to represent a criminal defendant who qualifies for public representation based on indigency, as defined by the Maryland Code, upon the court's finding that the local OPD denied previously and erroneously representation to the defendant. For reasons we shall explain, we answer that question in the affirmative.

*OPD*, 413 Md. at 415, 993 A.2d at 57.

> We explained:
> OPD contends that the Circuit Court's actions in this regard exceeded its authority, and that, although a circuit court may appoint counsel for an indigent defendant who has been denied representation by the local OPD, the circuit court may not appoint an attorney from the local OPD once the local OPD declines representation of the defendant. For reasons we shall explain, we disagree and hold that, upon finding that the local OPD denied erroneously representation to an indigent defendant, a circuit court may appoint any attorney, including an attorney from the local OPD, to represent a defendant.

*OPD*, 413 Md. at 428–29, 993 A.2d at 66.

In *OPD*, defendant Jason Flynn Stinnett was erroneously denied representation on the grounds that he did not meet the indigency standards utilized by the Public Defender, and as a consequence, entered a guilty plea and received a three-year suspended sentence and two years' probation. *Id.* at 421–22, 426–27, 993 A.2d at 61, 64–65. We held that:

where the local OPD declines representation to a defendant erroneously, because of the local OPD's failure to consider properly the statutorily-mandated criteria for determining indigency, and where a court finds, upon its subsequent mandatory independent review, that the individual qualifies for representation, the trial court, in carrying out its role as "ultimate protector" of the Constitutional right to counsel, may appoint an attorney from the local OPD to represent the indigent individual unless an actual and unwaived or unwaivable conflict of interest would result thereby.

*Id.* at 434, 993 A.2d at 69.

It is manifestly clear that *OPD* does not apply to Grandison in this proceeding. Grandison is well past the trial phase, and there was no previous or erroneous denial of representation by the Office of the Public Defender. There was no finding by that office that Grandison did not qualify for representation because he failed the indigency test. Grandison was also not compelled to proceed through a trial *pro se* because of such an erroneous denial.[7]

Even though the Circuit Court has inherent authority as the "ultimate protector" of a defendant's rights, that kind of authority, as the State argues, "does not transform into an affirmative duty by the lower court to obtain counsel for Grandison when he otherwise has no legal right to counsel at this stage of the proceedings, especially when Grandison fired the counsel who were appointed to him." We therefore hold that the Circuit Court did not err or abuse its discretion in allowing Grandison to discharge Lawlor and Proctor, of his own volition. We also affirm the Circuit Court's decisions in response to Grandison's discharge of counsel.

### Question Two: Peremptory Strikes

■ Questions Two through Four regard the various arguments Grandison raises in support of his motion to reopen a

---

7. Additionally, as the State argues, if *OPD* did apply, "the lower court in this case would be required to appoint counsel from the OPD every time Grandison fires counsel, essentially *ad infinitum*, which is untenable."

postconviction proceeding. First, we observe that Maryland law limits a defendant to one postconviction proceeding. *See Gray v. State,* 388 Md. 366, 375, 879 A.2d 1064, 1069 (2005); *Grayson v. State,* 354 Md. 1, 4, 728 A.2d 1280, 1281 (1999); *see also* Maryland Code (2001, 2008 Repl.Vol.) § 7–103(a) of the Criminal Procedure Article ("For each trial or sentence, a person may file only one petition for relief[.]"). Additionally, "[t]he court may reopen a postconviction proceeding that was previously concluded if the court determines that the action is in the interests of justice." Maryland Code (2001, 2008 Repl. Vol.), § 7–104 of the Criminal Procedure Article.[8]

Grandison argues that his postconviction proceedings should be reopened to consider the question of whether the State "engaged in racial discrimination in exercising peremptory strikes" on potential jurors preceding Grandison's 1984 trial.

The Circuit Court denied Grandison's motion to reopen his postconviction proceeding on this point. The Circuit Court found "Grandison's claim that the State systematically excluded African–Americans from the jury to be without merit." The Circuit Court did not, however, address the issue of whether Grandison had waived this claim.[9]

---

**8.** As originally enacted in 1958, the postconviction statute did not place any limits on the number of postconviction proceedings that a petitioner could file. *See Grayson v. State,* 354 Md. 1, 4, 728 A.2d 1280, 1281 (1999). In 1986, the Legislature limited a petitioner to two petitions, and in 1995, it further limited a petitioner to only one petition. *See id.* The 1995 revision gave courts the power to reopen the postconviction procedure if it determined that such action "is in the interests of justice." *See id.;* Chapter 110 of the Acts of 1995. Because of this limitation, Grandison must have his postconviction procedure reopened for his claims to be considered.

**9.** This Court has held that the State may not raise the issue of waiver for the first time on an appeal; it must be presented to the circuit court during post conviction proceedings. *See Conyers v. State,* 367 Md. 571, 587–88, 790 A.2d 15, 24–25 (2002). Although the Circuit Court in this case did not address the issue of waiver, the State did raise it in its "Answer to Defendant's Addendum to Motion to Reopen Post–Conviction," filed March 10, 2006. As such, it was not waived and this Court may properly consider it.

To raise an allegation of error in a postconviction proceeding, it must not have been waived previously. Under the postconviction statute:

(i) Except as provided in subparagraph (ii) of this paragraph, an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation:

1. before trial;

2. at trial;

3. on direct appeal, whether or not the petitioner took an appeal;

\*　　\*　　\*

6. in a prior petition under this subtitle; or

7. in any other proceeding that the petitioner began.

(ii) 1. Failure to make an allegation of error shall be excused if special circumstances exist.

2. The petitioner has the burden of proving that special circumstances exist.

Maryland Code (2001, 2008 Repl. Vol), § 7–106(b)(1) of the Criminal Procedure Article.[10]

Our cases have further defined when a petitioner waives claims in postconviction relief. The requirement that the waiver be "knowing and intelligent" applies only to whether the claim involves a "fundamental" right; a lesser standard applies to waiver of claims of error that are non-fundamental. As we explained in *McElroy v. State:*

We reasoned that the legislature did not require intelligent and knowing waiver in the case of all errors, but only with respect to errors which deprived a petitioner of fundamental

---

**10.** Although the postconviction statute underwent revisions in the years since Grandison's first postconviction proceeding, the Revisor's Note indicates that Section 7–106 contains "new language derived without substantive change" from the superseded provision, which is confirmed by a close comparison of the various statutory revisions. *See* Maryland Code (2001, 2008 Repl. Vol), § 7–106(b)(1) of the Criminal Procedure Article.

constitutional rights. As to those fundamental rights, intelligent and knowing waiver requires that the petitioner's knowledge of the right and the petitioner's personal waiver of the right be reflected on the record. As to lesser or non-fundamental rights, the petitioner will be deemed to have waived any claim of error if petitioner or petitioner's counsel failed to exercise a prior opportunity to raise it notwithstanding a lack of personal knowledge of the right of which petitioner was deprived, except when the failure to allege the error is excused by special circumstances.

When an allegation of error affecting fundamental constitutional rights could have been made by petitioner in a prior proceeding, [the postconviction statute] provides that "there shall be a rebuttable presumption that said petitioner intelligently and knowingly failed to make such allegation." The burden of producing evidence to rebut the presumption of waiver is placed upon the petitioner. (Footnotes and citations omitted.)

*McElroy v. State,* 329 Md. 136, 140–42, 617 A.2d 1068, 1070–71 (1993).[11] We need not pass judgment here, however, on whether Grandison's jury selection claim implicates a fundamental right, as his failure to raise the claim in any number of prior proceedings constituted a knowing, intelligent waiver.

Grandison acknowledges that "[t]he issue of racial discrimination in jury selection was not raised, on direct appeal, by Mr. Grandison's assigned public defender" in *Grandison II.* But Grandison's delay in raising this issue goes further than he acknowledges. As the State argues:

Grandison never raised this claim, either on its merits or as part of an ineffective assistance of counsel claim, in any prior proceeding before this one, including *Grandison III, Grandison IV, Grandison V,* or in federal habeas corpus

---

11. Several of our cases attempt to delineate what constitutes a "fundamental right." *See, e.g., State v. Rose,* 345 Md. 238, 244–48, 691 A.2d 1314, 1317–19 (1997); *see also Oken v. State,* 343 Md. 256, 270–71, 681 A.2d 30, 37 (1996) (discussing what types of claims require a knowing and intelligent waiver).

proceedings. Grandison first raised this claim on March 9, 2006, when his counsel ... filed a Second Addendum to Motion to Reopen Post–Conviction Proceeding and Request for Hearing and Discovery.... In the Second Addendum, [counsel] acknowledges that "[t]he racial skewing of the jury in Mr. Grandison's case has inexcusably never been raised."

At no point does Grandison address waiver in his brief, nor does he point to any "special circumstances" that might excuse such waiver. Grandison's failure to allege this particular error or to explain why it was waived—on direct appeal, during habeas corpus proceedings, or at any other stage of this case—are fatal to his claim at this point in the proceedings, as he does not rebut the statutory presumption of waiver against him. As such, we affirm the Circuit Court's denial of his motion on this point, without reaching the merits.

## Question Three: *Crawford*

■ Also in his motion to reopen a postconviction proceeding, Grandison argues that the following were incorrectly admitted into evidence: (1) reports of Grandison's behavior in prison; (2) victim impact statements; and (3) the former testimony of Helen Kondilidis. Grandison argues that these statements run afoul of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), which should be applied retroactively to cover the happenings at his own trial.

The Circuit Court held that *Crawford* does not apply retroactively to Grandison's trial. It held that Grandison's conviction was final, and as such, his right to appeal had been exhausted. It also held that victim impact statements are admissible in capital proceedings, and that Kondilidis's statements were properly admitted as former testimony.

In *Crawford*, the Supreme Court held: "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." 541 U.S. at 59, 124 S.Ct. at 1369. The Supreme Court then addressed the issue of retroactivity in *Whorton v. Bockting*, 549 U.S. 406,

417, 127 S.Ct. 1173, 1181, 167 L.Ed.2d 1 (2007), which held that the rule in *Crawford* was procedural, not substantive. As such, *Crawford* could not be applied retroactively "unless it is a watershed rul[e] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* (quotations omitted).[12] The Court decided that *Crawford* was not a watershed rule, and therefore, not applicable retroactively. *Id.* at 417–421, 127 S.Ct. at 1182–84.

*Whorton,* however, applied to *Crawford* in a federal context. Grandison refers us to *Danforth v. Minnesota,* 552 U.S. 264, 282, 128 S.Ct. 1029, 1042, 169 L.Ed.2d 859 (2008), which said that retroactivity analysis "limits the kinds of constitutional violations that will entitle an individual to relief on· federal habeas, but does not in any way limit the authority of a state court, when reviewing its own state criminal convictions, to provide a remedy for a violation that is deemed 'nonretroactive.'" In his brief, Grandison argues that "Maryland should exercise its power, recognized in *Danforth,* to retroactively apply the rule stated in *Crawford,* under Article 21 of the Maryland Declaration of Rights[.]"[13]

Before and after *Crawford,* this court has ruled that Article 21 and the Sixth Amendment to the U.S. Constitution are to be read *in pari materia. See Simmons v. State,* 333 Md. 547, 555 n. 1, 636 A.2d 463, 467 n. 1 (1994) ("The Confrontation Clauses of the Sixth Amendment to the Constitution of the United States and Article 21 of the Maryland Declaration of Rights are in *pari materia.*" (citations omitted)); *State v. Snowden,* 385 Md. 64, 74 n. 9, 867 A.2d 314, 320 n. 9 (2005) ("This Court often has construed the Confrontation Clause and Article 21 of the MDR to be in *pari materia.*" (citations omitted)). We see no reason to modify these precedents or depart from the Supreme Court's ruling in *Whorton* that

---

12. The "watershed rule" analysis comes from *Teague v. Lane,* 489 U.S. 288, 311, 109 S.Ct. 1060, 1076, 103 L.Ed.2d 334 (1989).

13. Article 21 gives an accused the right "to be confronted with the witnesses against him" and "to examine the witnesses for and against him on oath[.]" Art. 21 of the Maryland Declaration of Rights.

*Crawford* is procedural and need not be applied retroactively.[14]
We therefore affirm the Circuit Court's denial of Grandison's
motion to reopen postconviction proceedings on this question.

### Question Four: Mitigating Factors on Sentencing Form

■ Grandison's final argument in support of his motion to
reopen postconviction proceedings [15] is that he was harmed by
the trial court's markings on a sentencing form provided to
the jury. The Circuit Court described this argument in fuller
detail:

> At [Grandison's] 1994 re-sentencing hearing, the jury was
> provided with two forms [titled] "Findings and Sentencing
> Determination." The first concerned the death of Scott
> Piechowicz; the other, the death of Susan Kennedy. With
> the exception of the Court marking two mitigators, both
> forms were blank. Grandison argues in his motion:
>
>> [I]f the jury [were] told that they must accept the Court's
>> determination as to what mitigators existed, then little or
>> no discussion would have occurred as to the positive
>> aspects of [Grandison's] character. The jury would then
>> have spent almost the totality of their deliberations dis-
>> cussing the aggravator. (Citations omitted).

The Circuit Court considered this argument "without merit,"
and denied Grandison's motion.

As the State observes, Grandison did not, during his 1994
resentencing hearing, object to the manner in which the
sentencing form was marked. He did not make any excep-
tions to the resentencing court's jury instructions pertaining
to how the jury used the sentencing form. Grandison has also

---

**14.** Grandison's sole argument under Question Three is that *Crawford*
should apply retroactively. He does not make a general argument that
reopening his postconviction proceeding to address the three evidentia-
ry issues listed above would be "in the interests of justice," as required
by Section 7–104 of the Criminal Procedure Article, discussed *supra*.

**15.** This claim was also presented as part of Grandison's motion to
correct an illegal sentence. The Circuit Court analyzed it under the
motion to reopen postconviction proceedings only.

never raised this claim in any of the five previous appeals to this Court that span the seventeen years since the resentencing hearing. Grandison never raised this claim during previous postconviction proceedings, either standing alone or as part of an ineffective assistance of counsel claim. Grandison also makes no argument that reopening his postconviction proceedings on this point is somehow in the interests of justice.

In his brief, Grandison even references that the postconviction judge already, in 1998, ruled about the pre-marking of the sentencing forms on a different point. This makes it further clear to us that Grandison had knowledge of the sentencing form, and that he had ample opportunity to raise this claim in earlier proceedings. That he did not do so constitutes waiver. As such, we affirm the Circuit Court's denial of Grandison's motion on this question.

### Question Five: Letter to Jury

Grandison argues that he is entitled to resentencing or a belated appeal in order to litigate the admissibility of the State's Exhibit 21, a letter written by Grandison to Janet Moore. The Circuit Court was not persuaded by this argument:

> Grandison first raised [the admissibility of Exhibit 21] during his post conviction proceeding in 1998. In that proceeding, that Court held that the evidentiary issue was never raised on direct appeal and consequently should not be addressed. If, as that Court ruled in 1998, Grandison failed to raise an objection at trial or on direct appeal, then the Post Conviction Court's 1998 ruling would be accurate.
>
> * * *
>
> In this case, the Post Conviction Court ruled that Grandison had an opportunity to object to the use of State's Exhibit 21 at trial and on appeal, but failed to do so. As a result, that Court held that Grandison waived his right to contest the admission of Exhibit 21. (Citations omitted.)

At the hearing on April 26, 2010, Grandison argued that he had objected to the admission of Exhibit 21 on May 27, 1994, which would have properly preserved the objection. The Circuit Court did not find "persuasive evidence" that such an objection was made and declined to grant Grandison's motion for resentencing on this ground.[16]

We decline to consider the merits of Grandison's argument on this question. As the State argues, Grandison made no mention of Exhibit 21 in his direct appeal to this Court in 1995 in *Grandison III*, and the postconviction court summarily denied Grandison's claim relating to that exhibit in 1998. The postconviction court specifically held that Grandison, "by not raising this issue on appeal and providing no evidence to the Court for his reasons for failing to raise the issue previously, has waived his right to advance this issue on post conviction." Afterward, this Court denied Grandison's motion to reconsider denial of application for leave to appeal, which he had filed in response to his denial of postconviction relief. *See Grandison IV*, 351 Md. at 732, 720 A.2d at 322 (1998).

Furthermore, this claim was raised in Grandison's federal habeas corpus petition and also resolved by the U.S. District Court for the District of Maryland:

> [Grandison] claims that counsel should have raised the issue regarding Exhibit 21, the letter that allegedly was never formally moved into evidence. *Strickland* did not require the argument to be pressed as a matter of reasonable appellate representation, as there was no error in connection with the exhibit of a prejudicial nature, and **petitioner's failure to make the proper objections below would have resulted in the error not being preserved for appellate**

---

16. The Circuit Court used the standard of review outlined in *Foley v. K. Hovnanian at Kent Island, LLC*, 410 Md. 128, 141, 978 A.2d 222, 230 (2009) ("Ordinarily, an appellate court will not review an issue that has not been preserved in the trial court.") and *Basoff v. State*, 208 Md. 643, 650, 119 A.2d 917, 921 (1956) ("When a party has the option either to object or not to object, his failure to exercise the option while it is still within the power of the trial court to correct the error is regarded as a waiver of it estopping him from obtaining a review of the point or question on appeal.").

**review as a matter of Maryland law anyway.** (Emphasis added.)

*Grandison v. Corcoran,* 78 F.Supp.2d 499, 511 (D.Md.2000).

The pertinent statute reads:

For the purposes of this title, an allegation of error is finally litigated when: (1) an appellate court of the State decides on the merits of the allegation: (i) on direct appeal; or (ii) on any consideration of an application for leave to appeal filed under § 7–109 of this subtitle[.]

Maryland Code (2001, 2008 Repl.Vol.), § 7–106(a) of the Criminal Procedure Article.

We agree with the State that this claim has been finally litigated. We need not revisit this claim, and affirm the Circuit Court on Question Five.

### Question Six: Jury Instruction

■ Grandison alleges that the instructions given to the jury at his 1984 trial were faulty. Although Grandison included this line of argument in various motions, the Circuit Court analyzed it under Grandison's motion for resentencing. The Circuit Court's full analysis follows:

Grandison further claims the trial court's reasonable doubt instruction given in [the] 1984 trial "erroneously equated [the] reasonable doubt standard with [the] preponderance of the evidence standard." Unfortunately for Grandison, this claim meets a fate similar to his claim regarding admissibility of Exhibit 21. Importantly, this is the first time in 25 years Grandison has noted this objection. No objection was preserved regarding this issue at trial or on appeal. As the *Basoff* court noted,

When a party has the option either to object or not to object, his failure to exercise the option while it is still within the power of the trial court to correct the error is regarded as a waiver of it estopping him from obtaining a review of the point or question on appeal.

Under that clear instruction, this Court finds Grandison waived his right to appeal the reading of the reasonable

doubt instruction at the 1984 trial when he failed to object at said trial and on appeal. (Quoting *Basoff v. State*, 208 Md. 643, 650, 119 A.2d 917, 922 (1956)).

The Maryland Rules and case law support the Circuit Court's ruling that Grandison waived appellate review of the jury instructions in this case. First, Rule 4–325(e) provides:

No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury. An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object.

We have interpreted this rule to mean that "the failure to object to a jury instruction at trial results in a waiver of any defects in the instruction, and normally precludes further review of any claim of error relating to the instruction." *State v. Rose*, 345 Md. 238, 245, 691 A.2d 1314, 1317 (1997); *see also State v. Hutchinson*, 287 Md. 198, 202, 411 A.2d 1035, 1037 (1980) ("[A]ppellate review of jury instructions [will not] ordinarily be permitted under our rules unless the complaining party has objected seasonably so as to allow the trial judge an opportunity to correct the deficiency before the jury retires to deliberate.").

■ Preservation of the issues for appeal is an important cog in our overall evidence scheme, even in capital cases, as we have previously stated:

The rules for preservation of issues have a salutary purpose of preventing unfairness and requiring that all issues be raised in and decided by the trial court, and these rules must be followed in all cases including capital cases. The few cases where we have exercised our discretion to review unpreserved issues are cases where prejudicial error was

found and the failure to preserve the issue was not a matter of trial tactics.

\* \* \*

Counsel should not rely on this Court, or any reviewing court, to do their thinking for them after the fact. Furthermore, we have stated that even in a death penalty case, with the potential finality of its outcome, litigation cannot continue *ad infinitum* through counsel "withholding issues or framing the questions differently each time."

*Abeokuto v. State,* 391 Md. 289, 327, 893 A.2d 1018, 1040 (2006) (quoting *Conyers v. State,* 354 Md. 132, 150–51, 729 A.2d 910, 919–20 (1999)). Furthermore, this Court has recently explained that "[e]ven errors of a Constitutional dimension may be waived for failure to interpose a timely objection at trial." *Robinson v. State,* 410 Md. 91, 106, 976 A.2d 1072, 1081 (2009) (citations omitted).

The State argues that Grandison has declined to raise the jury instruction claim at numerous stages of his lengthy proceedings, waiting until 2007 to do so:

Grandison acknowledges that he did not object or note an exception to the reasonable doubt jury instruction when it was given in 1984.... Grandison never raised this claim in any of the five previous appeals to this Court beginning in 1984 *(Grandison I,* 301 Md. at 45 [481 A.2d 1135], *Grandison II,* 305 Md. at 685 [506 A.2d 580], *Grandison III,* 341 Md. at 175 [670 A.2d 398], *Grandison IV,* 351 Md. at 732 [720 A.2d 322], and *Grandison V,* 390 Md. at 412 [889 A.2d 366] ), nor in federal habeas corpus proceedings *(Grandison,* 78 F.Supp.2d at 499). Rather, Grandison raised this claim for the first time in a pleading [titled] "Motion for New Trial and Motion to Reopen Original Post Conviction Proceeding" filed in the [Circuit Court] on August 6, 2007.

In his briefs before this Court, Grandison makes arguments from the Constitution and from case law, but at no point does he address the waiver of this claim—the very reason for the Circuit Court's denial of his motion. Grandison's failure to raise his objection to the jury instruction in timely fashion,

combined with his failure to even address the waiver argument before this Court, persuades us to affirm the dismissal of his motion on this question.

## Question Seven: Legal Status of the Death Penalty in Maryland

 In his Motion to Correct an Illegal Sentence, under Maryland Rule 4–345, Grandison argued that this Court's ruling in *Evans v. State*, 396 Md. 256, 914 A.2d 25 (2006), "establishes that the implementation of a death sentence as a penalty for first degree murder is not [a] possibility[.]" As stated in his brief before this Court, Grandison also avers that "it would violate constitutional prohibitions against '*ex post facto* laws' for any warrant of execution to be issued, in the future[.]" The Circuit Court denied Grandison's motion on the grounds that the death penalty has not been eliminated in Maryland and, as Grandison observes, without addressing the *ex post facto* argument.

Our analysis in *Evans v. State* is squarely on point:

Maryland Rule 4–345(a) permits a court to "correct an illegal sentence" at any time. If the sentence is not "illegal," the court's revisory power over it, with exceptions not pertinent here, is limited to a showing of fraud, mistake, or irregularity in the sentence. There has been no contention by Evans, and there is no basis in the record for such a contention, that the 1992 death sentence imposed on him was the product of fraud, mistake, or irregularity. In order to be entitled to relief under Rule 4–345(a), therefore, Evans must show that the death sentence he is challenging is "illegal."

In two of Evans's prior appeals[,] we confirmed earlier rulings and made clear that [a] motion to correct an illegal sentence ordinarily can be granted only where there is some illegality in the sentence itself or where no sentence should have been imposed. In the more recent of those cases, we flatly held that there was nothing intrinsically illegal in Evans's sentence; he was properly found to be a principal in the first degree in two first degree murders for which the

death penalty could lawfully be imposed, and the court properly found that the aggravating factors proved outweighed any mitigating factors and that death was the appropriate sentence. Nothing has been presented in these appeals that would cause us to reconsider, much less overrule, that holding. (Citations omitted.)

*Evans,* 396 Md. at 271–72, 914 A.2d at 34. In *Evans,* this Court enjoined the Circuit Court for Baltimore City from carrying out the death penalty against Vernon Evans because the regulations governing administration of the lethal injections had been adopted using procedures violating the Administrative Procedure Act. The injunction would remain in effect until new regulations were properly promulgated.[17] *Id.* at 350, 914 A.2d at 81. The legality, in administrative law terms, of the method used for adoption of the procedures for administering a lethal injection, however, is distinct from the question of whether the death penalty sentence is itself illegal. Our opinion in *Evans* did not render unconstitutional the death penalty in Maryland; rather, it reaffirmed the importance of procedural integrity in carrying out such a penalty.

In *Evans,* we rejected the constitutional challenge to the death penalty. Evans contended that systemic racial bias rendered the death penalty invalid in Maryland under the Eighth and Fourteenth Amendments to the U.S. Constitution, as well as Articles 16, 24, and 25 of the Maryland Declaration of Rights. *See id.* at 294–327, 914 A.2d at 46–67. We denied this challenge. *See id.* at 327, 914 A.2d at 67. This part of *Evans* is consistent with our earlier holdings that the death penalty is not unconstitutional in Maryland. *See Tichnell v. State,* 287 Md. 695, 729, 415 A.2d 830, 848 (1980) ("In short, we hold that, on its face, the Maryland statutory scheme for imposition of the death penalty satisfies the requirements of the Eighth and Fourteenth Amendments to the federal constitution, and Art. 25 of the Maryland Declaration of Rights."); *Johnson v. State,* 292 Md. 405, 436, 439 A.2d 542, 559–60, (1982) (rejecting the argument that "the death penalty is *per*

---

17. This has not yet occurred.

*se* cruel and unusual punishment as measured against the standards of the Maryland Constitution").

Grandison asks us to hold that his death sentence is unconstitutional because of our ruling in *Evans*, contending that any new regulation enabling the State to execute him would be *ex post facto* since it would be carried out by a method unavailable at the time he was sentenced, given that the regulations then in place were invalid. This Court, however, implicitly rejected such a line of reasoning in *Evans* when we remanded Evans' case to the circuit court,

> with instructions to enjoin enforcement of lethal injection checklist included as part of division of correction execution operations manual until such time as the contents of that checklist, in their current or any amended form, are adopted as regulations in accordance with the requirements of the Administrative Procedure Act or the General Assembly exempts the checklist from the requirements of that Act[.]

*Id.* at 350, 914 A.2d at 81. Our mandate to the circuit court allowed for the executions to proceed once the procedural dictates were properly followed. Because we held Evans's execution could eventually proceed once the Administrative Procedure Act violation was remedied, logically, so could Grandison's because they stand in the same position.

Grandison, much like Evans—who was the man hired by Grandison to carry out the murders—was "properly found to be a principal" in first degree murders, for which the death penalty could have lawfully been imposed. Because no illegality inhered in the death penalty itself, we also declared that Evans' claims were "not cognizable in a motion under Rule 4–345(a) to correct an illegal sentence." *Evans*, 396 Md. at 276, 914 A.2d at 37. For the same reason, Grandison's claims are not cognizable under the same Rule.

In *Evans*, we did recognize a limited exception to the aforementioned rule when,

> in a capital sentencing proceeding, an alleged error of constitutional dimension may have contributed to the death sentence, at least where the allegation of error is partly

based upon a decision of the United States Supreme Court or of this Court rendered after the defendant's capital sentencing proceeding. To the extent that there is such an exception, it is a very narrow one. The subsequent decision relied upon must constitute a new judicial interpretation of a constitutional provision. (Citations, quotation marks, and footnotes omitted.)

*Evans*, 396 Md. at 272–73, 914 A.2d at 34–35. Grandison cites no case from this Court or the U.S. Supreme Court, adjudged since *Evans*, that would cause us to revisit our holding there. It is plain that no illegality inhered in the death sentence when first handed down to Grandison, and no Constitutional change has occurred since our decision in the *Evans* case. As the Circuit Court held, the penalty, legal when administered, is not now illegal as a matter of constitutional law.[18] Because a motion to correct an illegal sentence is not proper on this claim, we need not reach Grandison's *ex post facto* arguments. Thus, we affirm the Circuit Court's denial of Grandison's motion on this Question.

### Question Eight: Motion for a New Trial

To support his motion for a new trial, Grandison makes the same three arguments before this Court that he raised at the Circuit Court:

1. The State used perjured testimony of Cheryl Piechowicz and James Savage,

2. The State knowingly suppressed exculpatory evidence that showed Etta Horne, Charlene Sparrow, and Helen Kondilidis committed perjury, and

3. The mental [disorder] of Helen Kondilidis at the time of the 1984 trial [was undisclosed].

The Circuit Court denied his motion on all three grounds. The Circuit Court also denied Grandison's claim that he is

---

**18.** The Circuit Court said "it is clear the death penalty has not been invalidated in Maryland, rather[,] Maryland Courts have reinforced the necessity of adhering to legislative protocol."

entitled to a new trial because his capital sentencing procedure should have been bifurcated.

Maryland Rule 4–331 governs motions for new trial. A Circuit Court may grant a new trial at any time "in case of fraud, mistake, or irregularity." Maryland Rule 4–331(b). Additionally, the rule provides:

The court may grant a new trial or other appropriate relief on the ground of newly discovered evidence which could not have been discovered by due diligence [within ten days of the verdict] . . . on motion filed at any time if a sentence of death was imposed and the newly discovered evidence, if proved, would show that the defendant is innocent of the capital crime of which the defendant was convicted or of an aggravating circumstance or other condition of eligibility for the death penalty actually found by the court or jury in imposing the death sentence[.]

Maryland Rule 4–331(c).

In examining a circuit court's denial of a motion for a new trial, this Court has generally used the abuse of discretion standard. *See Merritt v. State,* 367 Md. 17, 28–29, 785 A.2d 756, 763–64 (2001). When an alleged error was committed during a trial, and the losing party, without fault, does not discover the alleged error during the trial, but instead raises the issue in a motion for new trial, we have used a standard of whether the denial of such motion was erroneous. *Id.* at 30–31, 785 A.2d at 764.

██ Under either standard, Grandison's argument before this Court fails. Regarding the testimony of Piechowicz and Savage, Grandison does not specifically identify what newly discovered evidence would entitle him to a new trial. He does not demonstrate how such evidence could demonstrate his innocence for the crime for which he had been convicted, as required by Rule 4–331(c). He also does not argue that the Circuit Court's ruling was an abuse of discretion or erroneous. Furthermore, Grandison already raised such claims in *Grandison II* and *Grandison III,* and they were rejected. *See Grandison II,* 305 Md. at 736–39, 506 A.2d at 606–07 (review-

ing the claim with respect to Savage); *Grandison III*, 341 Md. at 205–10, 670 A.2d at 412–15 (reviewing the claim with respect to Piechowicz).

■ Regarding the testimony of Horne, Sparrow, and Kondilidis, this issue was already raised, and decided, in *Grandison V. See Grandison V*, 390 Md. at 423–37, 889 A.2d at 372–381. The Circuit Court found "no persuasive evidence . . . to retreat from the previous and most current interpretation of this claim," and we agree. It was not an abuse of discretion to deny Grandison's motion on this ground.

■ Regarding the mental health of Kondilidis, the Circuit Court found Grandison's assertions to be "baseless, bald allegations." We agree. Grandison fails to articulate how the Circuit Court's ruling was either erroneous or an abuse of discretion. There is simply no evidence to support Grandison's claim in a way that would satisfy Rule 4–331.

Finally, Grandison argues that his capital sentencing proceeding should have been bifurcated because State used victim impact evidence. The Circuit Court denied this claim, relying on our holding in *Grandison III. See Grandison III*, 341 Md. at 229–30, 670 A.2d at 424 (making clear that "capital sentencing issues are to be resolved in a single proceeding, leaving *no discretion* with the trial court to permit a bifurcated proceeding"). Grandison does not explain why this Court should revisit this issue, let alone why it necessitates a new trial. We therefore reject Grandison's claims for a new trial and affirm the Circuit Court's decision.

## Question Nine: Aggravating Circumstances

■ Grandison argues that the death sentence he received was illegal because it was based on an aggravating circumstance that occurred after the murders had been committed. Both parties agree that the relevant aggravating circumstance in this case is that:

> [t]he defendant engaged or employed another person to commit the murder and the murder was committed pursu-

ant to an agreement or contract for remuneration or the promise of remuneration.

Maryland Code (1957, 1982 Repl.Vol.), Article 27, § 413(d)(7). Grandison's brief acknowledges that this Court ruled on the sufficiency of that evidence twice before. *See Grandison II,* 305 Md. at 767, 506 A.2d at 621 ("We have thoroughly reviewed the record and are satisfied that there was sufficient evidence to have allowed the jury to find an agreement between Grandison and Evans to have Scott and Cheryl Piechowicz killed so they would not be available as witnesses against Grandison in his federal drug trial."); *Grandison V,* 390 Md. at 436, 889 A.2d at 380 ("The evidence presented by the prosecution at Grandison's 1983 trial, including that of Evans's guilt and Grandison's role as mastermind is overwhelming and supports our confidence in the result of Grandison's 1983 trial."). Even after acknowledging these holdings, Grandison asks us to revisit the sentence on this ground. We decline to do so.

We agree with the State that this issue "amounts to nothing more than a back-door challenge to the sufficiency of evidence sustaining his conviction and sentence." Furthermore, we held in *Grandison V* that the sentences were proper in the face of a similar argument. *See Grandison V,* 390 Md. at 448, 889 A.2d at 387 ("Furthermore, because Grandison was sentenced to death based on the jury's determination that he employed Evans to commit murder as contemplated by Maryland Code (1957, 1982 Repl.Vol.), Article 27, Section 413(d)(7), we hold that his sentences were proper."). Grandison's argument on this point is nothing more than an attempt to relitigate an issue that this Court has spoken on multiple times. We therefore affirm the Circuit Court's denial of Grandison's motion to correct an illegal sentence on this ground.

## Conclusion

For the reasons outlined above, we hold that Grandison had no right to counsel during his collateral motions, and that the Circuit Court did not err or abuse its discretion in allowing

Grandison to discharge counsel and continue *pro se.* We also affirm the Circuit Court's denial and dismissal of Grandison's motions: (1) to reopen postconviction proceedings; (2) to correct an illegal sentence; (3) for a new resentencing hearing; and (4) for a new trial.

**JUDGMENT OF THE CIRCUIT COURT FOR SOMER-SET COUNTY AFFIRMED. APPELLANT TO PAY COSTS.**