*Robert P. Smallwood v. State of Maryland*, No. 2169, September Term, 2016.  Opinion by Fader, J.

**MD. RULE 4-345(A) – MOTION TO CORRECT AN ILLEGAL SENTENCE; RIGHT TO COUNSEL**

The imposition of a new sentence after a court grants a motion to correct an illegal sentence under Rule 4-345(a) is a sentencing at which a convicted person has the right to counsel. The right to counsel attaches because sentencing is a critical stage of a criminal proceeding and because the defendant has a due process right to counsel at a proceeding that may affect the fact and length of future incarceration.

Circuit Court for Baltimore City
Case No. 18204820

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2169

September Term, 2016

ROBERT P. SMALLWOOD

v.

STATE OF MARYLAND

Wright,
Beachley,
Fader,

JJ.

Opinion by Fader, J.

Filed:  June 4, 2018

The appellant, Robert P. Smallwood, presents us with the question of whether an incarcerated individual whom a circuit court has determined is imprisoned on an illegal sentence, and thus must be resentenced, has a right to counsel for the resentencing. We hold that he or she does.

## BACKGROUND

In 1982, a jury sitting in the Circuit Court for Baltimore City found Mr. Smallwood guilty of first-degree murder and use of a handgun in the commission of a crime of violence. After a dialogue in which the court made clear its intent to provide Mr. Smallwood with credit for 72 days he had served while awaiting trial, the court pronounced Mr. Smallwood's sentence on the murder count as "for the term of his natural life less 72 days," concurrent with a sentence of 15 years for the handgun conviction. On direct appeal, we affirmed.

Thirty years later, Mr. Smallwood filed a pro se motion to correct an illegal sentence pursuant to Rule 4-345(a) in which he contended that his sentence was "ambiguous, indefinite, and therefore illegal." In a February 2013 hearing, Mr. Smallwood made the somewhat contradictory arguments: (1) that his original sentence of "life less 72 days" was ambiguous and vague; and (2) that the sentence required the State to calculate his remaining life expectancy so that it could set a release date 72 days before his expected death. Although the motions court judge was initially skeptical, she ended up granting his motion.[1] She then, in the same hearing, imposed a new sentence: "Your sentence for the

---

[1] The motions court judge did not identify the basis on which she found the original sentence illegal. In announcing her decision, the court stated: "So, Mr. Smallwood, I'll

murder, sir, will be life suspend all but 80 years. And, for the concurrent sentence, it's 15 years and you get credit for the 72 days." The court also added five years' probation to the split sentence.

Two other aspects of the relatively brief hearing are noteworthy for our purposes. First, on two occasions Mr. Smallwood raised his lack of counsel. Early in the hearing, Mr. Smallwood stated: "I'm sorry. I want to apologize, too. I don't have counsel. I tried to get counsel for years; I couldn't do it. So, I tried to speak as best I could." And just before the court ruled, Mr. Smallwood again addressed his lack of counsel:

> See, that's why I knew I shouldn't have came back without an attorney. I tried for years to get an attorney. I already knew this was – this sentence was ambiguous. I knew it was vague. I tried for years to get an attorney; I couldn't put myself in a position to get one, so I decided to come down here anyway because I'm getting – you know, I got 31 years in, so I can't wait any longer.

The court did not follow up on either occasion.

Second, after imposing the new sentence, the court requested the assistance of an Assistant State's Attorney not involved in Mr. Smallwood's case to advise Mr. Smallwood of his appeal rights. The prosecutor advised Mr. Smallwood that he had 90 days to file a motion to modify his new sentence and 30 days to ask a three-judge panel to review his

---

grant your request. I will modify your sentence, and I'm going to note the objection of the State." Of course, Mr. Smallwood's request was not to modify his sentence, which would have been untimely, but to correct an illegal sentence. Both the State and Mr. Smallwood agree that the circuit court's action, in context, should be understood as having granted the motion that was before it, and not as improperly granting a modification that was not, and could not properly have been, requested. We agree.

2

new sentence, but that he had no direct appeal right. Neither Mr. Smallwood nor the State took an appeal at that time.

More than a year later, in July 2014, Mr. Smallwood filed a pro se postconviction petition challenging the motions court's failure to provide him with counsel or advise him of his right to counsel at resentencing. Mr. Smallwood conceded that he did not have a right to counsel for the presentation of his motion, but argued that once the court found his "sentence illegal, then the only thing to do is impose a new sentence. And at that new sentencing procedure, I'm saying I should have been advised of my right to an attorney." After the postconviction court raised *sua sponte* whether Mr. Smallwood's postconviction claim should have been raised on direct appeal, the court learned that Mr. Smallwood had been advised that he had no right to appeal. In supplemental briefing, the State conceded that Mr. Smallwood had a right to direct appeal of his new sentence and suggested that "the appropriate remedy is to allow [Mr. Smallwood] to file a belated appeal."

In a written opinion, the postconviction court rejected Mr. Smallwood's right-to-counsel claim. The court held that the right to counsel applies only through direct appeal, and does not extend to collateral proceedings like a motion to correct an illegal sentence. But, noting the State's concession as to Mr. Smallwood's appeal rights, the postconviction court awarded Mr. Smallwood the right to file a belated appeal from the order imposing his new sentence. Mr. Smallwood's belated appeal is the matter now before us.

## DISCUSSION

Although this matter arises out of a rather complicated procedural history, most of that is irrelevant to the straightforward issue before us: Once a court has granted a motion

3

to correct an illegal sentence, and so is going to impose a new sentence, does the convicted person have a right to counsel? We hold that he or she does.[2]

## I. MR. SMALLWOOD'S APPEAL IS PROPERLY BEFORE THIS COURT.

The State raises three arguments as to why we cannot, or should not, address the merits of Mr. Smallwood's right-to-counsel claim in this appeal.[3]

First, the State argues that Mr. Smallwood has no right to appeal from the circuit court's grant of his motion to correct an illegal sentence. But Mr. Smallwood appeals from the sentence imposed by the circuit court, not from the grant of his motion. To accept the State's argument would require us to hold that no sentence imposed by a court after granting a motion to correct an illegal sentence could be subject to direct challenge by the

---

[2] We take no position as to whether Mr. Smallwood's initial sentence was illegal or whether the motions court erred in granting that motion. The State concedes that we are not in position to address that decision because the State did not appeal from it. We do, however, note that Mr. Smallwood's claim here is based entirely on the specific language used by the trial court in imposing his sentence for murder: "for the term of his natural life less 72 days." Mr. Smallwood did not argue that there is any inherent ambiguity in imposing a life sentence in which credit is awarded for time served. To the contrary, he argued that the court's reference to 72 days was *not* intended merely to provide credit for time served, but was instead intended to limit the time he would serve going forward to 72 days less than the anticipated length of his natural life. Thus, the issue before the motions court was whether the specific language "life less 72 days" was vague and ambiguous— Mr. Smallwood argued that it was; the State argued that, especially in the context in which the sentence was imposed, it was not. The current procedural posture of the case precludes us from weighing in on that issue.

[3] The State also argues that Mr. Smallwood was not entitled to counsel because what he really wanted from the motions court was not to correct an illegal sentence but to order a correction to his commitment record. We disagree, both because Mr. Smallwood unquestionably argued that his sentence was illegal and because regardless of what he requested, what the court actually did was vacate his initial sentence and resentence him. That is the decision before us for review.

4

convicted person.  The State has not pointed us to any authority for that proposition.[4]  We rejected a similar argument in *Sanders v. State*, 105 Md. App. 247 (1995).  As with Mr. Sanders in that case, Mr. Smallwood here "is not appealing the grant of the motion to correct an illegal sentence . . . ."  *Id.* at 253.  To the contrary, Mr. Smallwood "is appealing the sentence that resulted from resentencing."  *Id.*; *cf. Hoile v. State*, 404 Md. 591, 619 (2008) ("The new sentence [imposed after a motion for reconsideration was granted] represents a sentence imposed on [the defendant], and as such, is appealable."); *Webster v. State*, 359 Md. 465, 477 (2000) ("Assessment of a new sentence resurrects the penalty portion of a judgement; it replaces the prior sentence. . . .  Thus, the sentence imposed as a result of the granting of the motion for reconsideration is the appealable order . . . .").

Second, the State contends that because Mr. Smallwood did not argue below that he had a right to counsel at his resentencing, "there is, technically speaking, no circuit-court ruling denying Smallwood's counsel-related claims."  Although Mr. Smallwood did not expressly argue that he had a right to have counsel present, he did twice call to the motions court's attention his desire to have counsel present.  On neither occasion did the court ask a question.

---

[4] The State instead cites authority for inapposite legal propositions.  For example, the State, relying on *Evans v. State*, 396 Md. 256 (2006), argues that ineffective assistance of counsel claims and, by analogy, claims based on the denial of counsel, cannot be raised in a Rule 4-345(a) motion to correct an illegal sentence.  But Mr. Smallwood's Rule 4-345(a) motion was not premised on the denial of counsel.  That issue arose only after the court granted his 4-345(a) motion.

Moreover, if Mr. Smallwood did not preserve the issue, it is likely because he lacked the assistance of counsel to help him recognize the need to do so. Indeed, the right to counsel is important precisely because it "seeks to protect a defendant from the complexities of the legal system and his or her lack of understanding of the law." *Brye v. State*, 410 Md. 623, 634 (2009). For that reason, courts are required to ensure that any waiver of the right is knowing and voluntary: the right to counsel is "absolute and can only be foregone by the defendant's affirmative 'intelligent and knowing' waiver." *Robinson v. State*, 410 Md. 91, 107 (2009).[5] "A defendant's actual incarceration in a jail, as a result of a proceeding at which he was unrepresented by counsel and did not knowingly and intelligently waive the right to counsel, is fundamentally unfair." *DeWolfe v. Richmond*, 434 Md. 444, 460 (2013) ("*DeWolfe II*") (quoting *Rutherford v. Rutherford*, 296 Md. 347, 360-61 (1983)) (emphasis removed). Additionally, "if the right upon which the allegation

---

[5] Expounding on this right, our Court of Appeals has quoted favorably the following passage from the Supreme Court's plurality decision in *Von Moltke v. Gillies*, 332 U.S. 708, 723-24 (1948):

> The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. . . . A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

*Parren v. State*, 309 Md. 260, 272-73 (1987) (internal quotation marks omitted).

6

is premised is a fundamental right, the allegation will not be deemed waived simply because it was not raised at a prior proceeding." *Wyche v. State*, 53 Md. App. 403, 407 (1983). Because the right to counsel is fundamental, it "may be waived only where the petitioner intelligently and knowingly effects the waiver." *Id.* Mr. Smallwood certainly made no such waiver here. For these reasons, even if not preserved, we would choose to exercise our discretion under Rule 8-131(a) to consider Mr. Smallwood's claim.

Third, the State argues that Mr. Smallwood's right-to-counsel claim would more appropriately be considered in an appeal from the denial of Mr. Smallwood's postconviction petition, consideration of which this Court has stayed pending the resolution of this direct appeal. We see no reason to further postpone resolution of the important issue raised here to await that collateral challenge. *Cf. Greco v. State*, 427 Md. 477, 503-04 (2012) (stating that the fact that the same issue was raised in a separate proceeding in the Court of Special Appeals was not a reason to decline review, but instead "lends support for this Court to review the challenge to the sentence without further delay, for the purpose of efficiency and complete resolution"). The issue has been fully briefed, presented, and argued here. We also have the benefit of the record before the postconviction court and of that court's analysis.

Finding no impediment to our consideration of Mr. Smallwood's challenge, we proceed to the merits.

## II. THE PROCEEDING IN QUESTION WAS A SENTENCING.

A central point of dispute between the State and Mr. Smallwood is over how we should view the part of the proceeding below in which the motions court imposed a new

7

sentence on Mr. Smallwood. According to the State, the imposition of a new sentence was simply a non-severable part of the proceedings on Mr. Smallwood's motion to correct an illegal sentence. Thus, the State contends, it was not really a sentencing at all. Case law stating that convicted persons have no right to counsel in collateral proceedings generally, and no right to counsel to bring motions to correct illegal sentences in particular, is therefore dispositive.

Mr. Smallwood, on the other hand, views the imposition of his new sentence as analytically distinct from the decision to grant his motion. He concedes that he had no right to counsel in preparing or arguing his motion to correct an illegal sentence. He argues, however, that once the court granted that motion, and thus was required to impose a new sentence, what followed was a sentencing.

We agree with Mr. Smallwood. As a practical matter, it cannot seriously be disputed that the court imposed a new sentence. After granting his motion, the court declared that Mr. Smallwood's "sentence for the murder . . . will be life suspend all but 80 years." The court thus imposed on Mr. Smallwood a new sentence for the crimes of which he had been convicted 30 years earlier. It is also clear that the judge understood that she had just imposed a new sentence, as she requested the assistance of an Assistant State's Attorney to advise Mr. Smallwood of certain rights that follow imposition of a sentence. *See* Rule 4-345(e) (stating that court has revisory power over a sentence upon "a motion filed within 90 days after imposition of a sentence"); Rule 4-344(a) (allowing defendant to seek review of sentence by three-judge panel when an application is filed "within 30 days after the

imposition of sentence"). Although not the first sentence imposed, a resentencing is a sentencing. *Jones v. State*, 414 Md. 686, 694 (2010).

Additionally, in imposing the new sentence, the court did not merely correct a technical error in the prior sentence or comply with an appellate mandate to enter a particular sentence; the new sentence was both materially different and an exercise of the court's discretion. Whether the old sentence was life, with no part of it suspended (but with credit for 72 days' time served)—as the State had claimed—or life, with 72 days suspended—as Mr. Smallwood claims to have understood it—both are different from a sentence of life suspend all but 80 years, with five years' probation.[6]

We again find *Sanders* instructive. There, the circuit court had granted Mr. Sanders's Rule 4-345(a) motion, concluding that his original 20-year sentence for a handgun violation was illegal because the maximum possible sentence was 15 years. 105 Md. App. at 249-50. At a resentencing proceeding that occurred nine years after the original sentencing, a different judge imposed the maximum 15-year sentence, believing himself bound by the determinations of the original judge and thus unable to consider subsequent developments. *Id.* at 251. We vacated and remanded. We observed that

---

[6] In addition to being literally different sentences, a convicted person sentenced to life is potentially eligible to be considered for parole at a different time than a convicted person sentenced to life with all but 80 years suspended. *Compare* Md. Code Ann., Corr. Serv. § 7-301(a) (providing, subject to conditions and limitations, that inmates are eligible for parole when they have served one-fourth of their aggregate sentence) *with* § 7-301(d)(2) ("an inmate who has been sentenced to life imprisonment is not eligible for parole consideration until the inmate has served 15 years"). Persons convicted of violent crimes committed on or after October 1, 1994 are subject to still different provisions, *see* Corr. Serv. § 7-301(c), but Mr. Smallwood committed his crime in 1982.

"whether a sentence is found to be illegal on appeal or by the trial court directly, the result is that a new sentence must be imposed," and the rules for such resentencings are not different. *Id.* at 253. The trial court thus erred by restricting its review to only the information available at the initial sentencing because "[t]he law requires the [resentencing] judge to conduct his own inquiry and to reach his own sentence based upon the evidence before him." *Id.* at 257; *see Jones*, 414 Md. at 703 (stating that the Court "agree[s] with the reasoning of *Sanders*").[7]

Under *Sanders*, the portion of the proceeding that followed the court's decision to grant Mr. Smallwood's motion became a sentencing. That the court imposed the new sentence after granting a motion to correct an illegal sentence—as opposed to initially, on remand, on reconsideration, on a motion for modification, after postconviction relief, or otherwise—does not make it less of an imposition of a sentence. Our courts have similarly

---

[7] A resentencing hearing is not required in every case in which a court grants a motion to correct an illegal sentence. In *Holmes v. State*, for example, the Court of Appeals held that a sentence in which home detention was imposed as a condition of probation entered pursuant to a guilty plea was illegal. 362 Md. 190, 192 (2000). Under the particular circumstances of that case, the Court did not remand for resentencing but instead ordered that the condition of probation be struck. *Id.* at 196-97. Similarly, when we conclude that sentences have been imposed for two or more separate crimes that should have been merged, we will sometimes vacate any sentence imposed for the conviction(s) on the lesser included offense(s) without remanding for resentencing. *See, e.g.*, *Perry v. State*, 229 Md. App. 687, 715 (2016). In such cases, there is no resentencing and, therefore, no requirement to appoint counsel for that purpose. That, of course, is not the case when we vacate a sentence for a lesser included offense and remand for resentencing in the trial court's discretion. *See, e.g.*, *Twigg v. State*, 447 Md. 1, 20 (2016). We leave to future consideration, in an appropriate case, whether a convicted person has a right to counsel for a resentencing in which: (1) a correction to an illegal sentence is merely technical; or (2) the circuit court is entirely lacking in discretion because it is bound to follow an appellate mandate. Neither is true here.

recognized that sentences imposed after granting other collateral motions "constitute[] the imposition of a new sentence." *Hoile*, 404 Md. at 614 (concluding that sentence imposed after granting motion for modification was an appealable final judgment); *see also Webster*, 359 Md. at 477 ("Here, the collateral motion, the motion for reconsideration, was granted, and resulted in the imposition of a new sentence."). For the same reason, we find inapposite *Grandison v. State*, 425 Md. 34 (2012), and other cases cited by the State that address the *bringing* of collateral petitions.

### III. MR. SMALLWOOD HAD A RIGHT TO COUNSEL FOR RESENTENCING.

We now turn to whether a convicted person has the right to counsel at the imposition of a sentence after a determination that the prior sentence was illegal. Our courts have identified two different sets of constitutional sources for the right to counsel. First, "[t]he Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights guarantee a right to counsel, including appointed counsel for an indigent, in a criminal case involving incarceration." *Rutherford*, 296 Md. at 357. Under these provisions, "[a]s a general proposition, courts have deemed the assistance of counsel an indispensable and basic right whenever a particular stage or proceeding in the criminal justice process qualifies as 'critical.'" *Utt v. State*, 293 Md. 271, 274 (1982). "The underlying policy, in a nutshell, is that 'essential fairness is lacking if an accused cannot put his case effectively in court,' and that the accused most likely will be unable to present an effective defense without the aid of counsel." *Id.* at 275 (quoting *State v. Renshaw*, 276 Md. 259, 265 (1975)).

11

Second, "[u]nder certain circumstances, the requirements of due process include a right to counsel, with appointed counsel for indigents, in civil cases or other proceedings not constituting critical stages of criminal trials." *Rutherford*, 296 Md. at 358. Under Article 24 of the Maryland Declaration of Rights,[8] "indigent defendants ha[ve] a due process right to state-furnished counsel in any proceeding involving incarceration." *DeWolfe II*, 434 Md. at 459; *id.* at 461-62 (citing cases in which the Court has "reaffirmed that the right attaches in any proceeding that may result in the defendant's incarceration"). "As repeatedly pointed out in criminal and civil cases, it is the fact of incarceration, and not the label placed upon the proceeding, which requires the appointment of counsel for indigents." *Rutherford*, 296 Md. at 361. The due process protections of Article 24 "are broader than those found in the United States Constitution" and broader than those contained in Article 21. *DeWolfe II*, 434 Md. at 457 n.9, 460-61.

## A. Sentencing Is a Critical Stage.

The Supreme Court's jurisprudence regarding the right to counsel at sentencing has evolved in stages. In *Townsend v. Burke*, a decision that predates the Supreme Court's application of the Sixth Amendment as against the States, the Court found a due process violation when the absence of counsel led to a sentencing decision that was premised on false assumptions. 334 U.S. 736, 740 (1948). There, the petitioner had been arrested one

---

[8] Article 24 provides "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

day, pleaded guilty the next, and was sentenced the day after that. *Id.* at 737. During that time, he was denied contact with anyone other than a ten-minute conversation with his wife. *Id.* at 737-38. At sentencing, the judge listed, and appeared to base his decision on, a number of assumptions about the petitioner's criminal history that turned out to be false. *Id.* at 739-40. The Supreme Court observed that, had counsel been present, he "would have been under a duty to prevent the court from proceeding on such false assumptions and perhaps under a duty to seek remedy elsewhere if they persisted." *Id.* at 740. The Court found that the combination of the "extensively and materially false" evidentiary foundation and the absence of counsel "render[ed] the proceedings lacking in due process." *Id.* at 741.

In *Gideon v. Wainwright*, 372 U.S. 335 (1963), the Court extended the right to counsel to "every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." *Mempa v. Rhay*, 389 U.S. 128, 134 (1967).[9] In *Mempa*, the Court considered its pre-*Gideon* case law regarding the right to counsel at sentencing in light of this new *Gideon* framework. In that context, the Court found *Townsend* particularly instructive, observing that it "illustrates the critical nature of sentencing in a criminal case and might well be considered to support by itself a holding that the right to

---

[9] Prior to *Gideon*, the right to counsel was not uniformly applied to the States. Instead, under *Betts v. Brady*, 316 U.S. 455 (1942), the right applied only where there were "special circumstances" that made it applicable. *Mempa*, 389 U.S. at 134. In *Gideon*, the Court overruled *Betts* and "held that the Sixth Amendment as applied through the Due Process Clause of the Fourteenth Amendment was applicable to the States and, accordingly, that there was an absolute right to appointment of counsel in felony cases." *Id.*

counsel applies at sentencing." *Mempa*, 389 U.S. at 134. The Court then applied the lessons of *Townsend* and other precedents to the challenge before it.

The State of Washington sentencing scheme at issue in *Mempa* allowed sentencing to be deferred pending completion of periods of probation. *Id.* at 130. If a defendant violated probation, however, the court was required to impose the maximum sentence allowed by law for whatever crime was at issue. *Id.* at 135. The only discretion the court had was that it could recommend that the parole board approve release after a certain period of time. *Id.* Mr. Mempa, convicted of joyriding, originally received a sentence of 30 days' incarceration, deferred to follow two years' probation. *Id.* at 130. When the court revoked his probation several months later, without counsel present, the court immediately sentenced Mr. Mempa to ten years' imprisonment, with a recommendation that the parole board release him after a year. *Id.* at 131.

The State argued that Mr. Mempa was not entitled to counsel at his sentencing upon revocation of probation because, with the trial court bound to sentence Mr. Mempa to the maximum possible sentence, that resentencing was "a mere formality constituting part of the probation revocation proceeding." *Id.* at 135. The Supreme Court disagreed. Although the trial court had to impose the maximum possible sentence, it did still have discretion to make a release recommendation on which the parole board placed "considerable weight." *Id.* Thus, "the necessity for the aid of counsel in marshaling the facts, introducing evidence of mitigating circumstances and in general aiding and assisting the defendant to present his case as to sentence is apparent." *Id.* However, "[e]ven more important" to the Court was "the fact that certain legal rights," including the right to take an appeal, "may be lost if not

14

exercised at this stage." *Id.* at 135-36. Thus, the Court held, "a lawyer must be afforded at this proceeding." *Id.* at 137.

Subsequently, in *Gardner v. Florida*, a plurality of the Court observed that although a "defendant has no substantive right to a particular sentence within the range authorized by statute, the sentencing is a critical stage of the criminal proceeding at which he is entitled to the effective assistance of counsel." 430 U.S. 349, 358 (1977); *see Catala v. State*, 168 Md. App. 438, 468-69 (2006) (holding that a defendant who appears without counsel at sentencing must be given opportunity to explain why). That is because "[t]he defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process." *Gardner*, 430 U.S. at 358.

From these cases we glean the following: (1) sentencing is a critical stage of a criminal proceeding at which the right to counsel attaches; (2) the right attaches because (a) the results of a sentencing can affect the fact and duration of a defendant's incarceration, and (b) counsel can both assist a defendant in presenting his or her case and ensure that the defendant receives due process; and (3) the right applies even when the sentencing court has minimal discretion. The State points out, accurately, that these cases have generally addressed the right to counsel at an initial sentencing, not a resentencing after the grant of collateral relief. We now address whether that difference should cause us to reach a different conclusion.

15

## B.    Resentencing Is a Critical Stage.[10]

We see no ground for distinguishing a resentencing such as that here from a sentencing when it comes to the application of the right to counsel. A resentencing, like a sentencing, involves the imposition of a sentence, and can alter both the fact and duration of a defendant's incarceration. *See Sanders*, 105 Md. App. at 253-54. Counsel at resentencing, as at sentencing, can provide assistance to the defendant and ensure that the defendant receives due process. *Townsend*, 334 U.S. at 740-41. And trial courts generally have wide discretion in imposing a new sentence, as they have when imposing an initial sentence. *Jones*, 414 Md. at 693.

Although no Maryland appellate court has yet addressed this issue directly, our preliminary conclusion that the right to counsel applies on resentencing finds strong support in *Bartholomey v. State*, 267 Md. 175 (1972). There, the Court of Appeals considered the fate of death penalty cases in light of *Furman v. Georgia*, 408 U.S. 238 (1972), in which the Supreme Court concluded that certain discretionary death penalty statutes violated the Eighth Amendment to the United States Constitution. The Court of

---

[10] As a preliminary matter, the State argues that the Sixth Amendment and Article 21 do not apply at all here because a motion to correct an illegal sentence is not a stage of a criminal proceeding, but "a single civil proceeding in the nature of a collateral attack on the original judgment of conviction." To the contrary, unlike a postconviction proceeding, a motion to correct an illegal sentence is "part of the same criminal proceeding and not a wholly independent action. [] Rule [4-345(a)] simply grants the trial court limited continuing authority in the criminal case to revise the sentence." *State v. Kanaras*, 357 Md. 170, 183-84 (1999). A Rule 4-345(a) motion is collateral to the original prosecution and direct appeal, *see Grandison*, 425 Md. at 39 (referring to a Rule 4-345(a) motion as "part of the aforementioned collateral proceedings"), but it is filed and addressed as part of the criminal case, not as a separate civil proceeding.

Appeals first determined that the Supreme Court's decision necessarily invalidated all of the death sentences before it and, as a result, that each convicted individual would need to be resentenced. *Id.* at 184. Because different cases were (or, as we shall see, were not) before it in different procedural contexts, the Court addressed them separately. Two of those cases are particularly instructive.

Mr. Bartholomey had been convicted of first-degree murder. *Id*. at 180. As a result, the only legal sentence he could receive on remand was "life imprisonment; no discretion is lodged in the sentencing judge and the imposition of any other sentence would plainly be illegal." *Id.* at 185. Because only the circuit court had jurisdiction to impose the sentence, the Court remanded the case for a new sentencing hearing "with directions that it sentence Bartholomey to life imprisonment on each of his murder convictions." *Id.* at 186. Even though the circuit court thus lacked any discretion as to the sentence to be imposed, the Court still stated that, "[a]t the resentencing hearing, Bartholomey has the right to be present and represented by counsel," as well as the right of allocution. *Id.*

While Mr. Bartholomey's case was before the Court on direct appeal, the case of Elisha Sterling, Jr. was not properly before the Court at all because Mr. Sterling had improperly filed his petition with the Court itself, rather than with the appropriate circuit court. *Id.* at 191. The Court observed, however, that because the death sentence was clearly illegal under *Furman*, if Mr. Sterling filed a motion to correct an illegal sentence or a postconviction petition with "the trial court which imposed the sentence," that court would have "the power to vacate it." *Id.* at 191-92. As a result, the Court obliged the

request of all parties to provide guidance as to what should occur if Mr. Sterling were to seek such relief. *Id.* at 192.

Mr. Sterling was convicted of rape, not first-degree murder. As a result, unlike in Mr. Bartholomey's case, the circuit court on remand was not restricted by statute as to the sentence it could impose. *Id.* at 192-93. Nor would that court be mandated to sentence Mr. Sterling to "the next most severe penalty which the court could lawfully impose." *Id.* at 193. Rather, "in resentencing Sterling, and [others] similarly situated, the sentencing court must approach its task as if no sentence had ever been imposed, and it was exercising its sentencing discretion . . . for the first time." *Id.* The judge was thus "invested with wide discretion in determining the sentence to be imposed within the authorized statutory limits." *Id.* The sentencing judge could therefore consider "the defendant's conduct after the offense was committed," including "evidence of events occurring after the date of the original sentencing to whatever extent he may deem necessary." *Id.* at 194. Especially notable for our purposes, the Court of Appeals believed that "[i]t [went] without saying that, as in Bartholomey, Sterling is entitled to be present at the sentencing hearing, represented by counsel, and afforded his right of allocution." *Id.*[11]

---

[11] The Court's statement that Mr. Sterling was entitled to representation by counsel for his resentencing proceeding was dicta, both because the Court admittedly lacked jurisdiction over the case and because it is not clear that the right to counsel was placed at issue—the decision does not analyze the issue or contain any indication that the parties had taken contrary positions on it. We nonetheless accord the statement substantial weight, both because the Court made it in the course of purposefully providing guidance to lower courts as to how to conduct resentencing proceedings and because the Court expressly intended the statement to apply to the very situation at issue here, a resentencing following the grant of a motion to correct an illegal sentence.

18

Courts in other jurisdictions have agreed that there is a right to counsel in a resentencing that follows the grant of a collateral motion. In *State v. Scott*, for example, the Florida Supreme Court held that a prisoner whose sentence was found illegal, and who was therefore "entitled to a modification of the original sentence or the imposition of a new sentence," was then also entitled to "the full panoply of due process considerations," including the right to counsel. 439 So. 2d 219, 220 (Fla. 1983). The court found it "[u]narguabl[e]" that, in that circumstance, "the prisoner to be sentenced is facing a critical stage of the criminal proceedings, whether the sentence to be imposed is the immediate result of adjudication of guilt or the result of a successful [collateral] challenge." *Id.* at 221. And in *State v. Kelly*, a Louisiana intermediate appellate court vacated the sentence of a defendant who was resentenced without counsel after his original sentence had been set aside on a motion to correct an illegal sentence. 217 So. 3d 576, 577 (La. Ct. App. 2017). The court did so even though the defendant had "received the minimum sentence available" in his resentencing, and might receive a harsher one on remand, because "a defendant has a right to counsel at every critical stage of criminal proceedings, including a resentencing hearing." *Id.* at 585; *see also State v. Wilson*, 179 So. 3d 903, 907 (La. Ct. App. 2015) (holding that defendant was entitled to counsel "to protect his interests" at resentencing after grant of motion to correct an illegal sentence).

Similarly, and for the same reason, the Supreme Court of Ohio has held that a defendant is entitled to counsel even at a resentencing hearing "conducted for the limited purpose of properly imposing statutorily mandated postrelease control." *State v. Schleiger*, 21 N.E.3d 1033, 1036 (Ohio 2014). Although the court lacked discretion at the hearing,

19

"counsel's presence ensures that the court complies with the directives of the statute, that it does not exceed the scope of the hearing, that the defendant understands the imposition of postrelease control, and that issues are properly preserved for appellate review." *Id.*

We agree with these courts that, for largely the same reasons that an initial sentencing is a critical stage of a criminal proceeding at which a defendant is entitled to counsel, a resentencing after the grant of a motion to correct an illegal sentence is also a critical stage at which a defendant is entitled to counsel.

### C. Article 24 of the Declaration of Rights Provides a Right to Counsel at Resentencing.

Independent of our analysis under the Sixth Amendment and Article 21, Mr. Smallwood also had a right to counsel at his resentencing under Article 24 of the Declaration of Rights.[12] The Court of Appeals has interpreted the right to counsel under Article 24 broadly to "attach[] in any proceeding that may result in the defendant's incarceration." *DeWolfe II*, 434 Md. at 461 (citing cases applying the right to civil contempt proceedings and probation revocation proceedings). The critical factor in determining whether there is a right to counsel "is the fact of incarceration, and not the label placed upon the proceeding." *Rutherford*, 296 Md. at 361.

The Court of Appeals's decision in *DeWolfe II* is instructive as to the breadth of this right. There, the Court determined that Article 24 provides a right to counsel at a defendant's initial appearance before a district court commissioner, during which the

---

[12] Because the protections of Article 24 with respect to the right to counsel are broader than those of the Fourteenth Amendment, *DeWolfe II*, 434 Md. at 457 n.9, we confine our due process discussion and ruling to Article 24.

commissioner makes a preliminary determination as to whether the defendant "is eligible for pretrial release" and, if so, whether and in what amount to impose bail. 434 Md. at 450. That is so even though a defendant who is not released by the commissioner must be presented promptly to a district court judge, at which time the defendant has a right to counsel and to the district court judge's independent determination regarding the fact and amount of bail. *Id.* at 450-51, 455. The Court of Appeals held that defendants have a right to counsel at the initial appearance because "the defendant is in custody and, unless released on his or her personal recognizance or on bail, the defendant will remain incarcerated until a bail review hearing before a judge." *Id.* at 464. It did not matter that the custody might continue "only for a brief time" before the defendant had a right to a hearing, with counsel, before a judge, *id.* at 463-64 (quoting *DeWolfe v. Richmond*, 434 Md. 403, 429 (2012) ("*DeWolfe I*")); it was enough that the proceeding had a potential effect on a defendant's incarceration, *DeWolfe II*, 434 Md. at 464.

In a dissent joined by two other judges, Chief Judge Barbera pointed out that the Court had not previously extended the due process-based right to counsel beyond circumstances involving "in-court proceedings, conducted by a judge and having the potential to result in a judge-ordered term of incarceration that was final, save for the possibility of a subsequent court proceeding at which the defendant would have the right to counsel." *Id.* at 467 (Barbera, C.J., dissenting). Because hearings before district court commissioners had "none of those features," the dissent would not have extended the right to those hearings. *Id.*

21

Here, as discussed above, a resentencing after the grant of a motion to correct an illegal sentence has the potential to affect the term of incarceration, which the majority in *DeWolfe II* viewed as sufficient by itself to invoke a due process right to counsel. Notably, such a resentencing also meets the *DeWolfe II* dissenters' criteria for application of the right as the proceeding is in court, conducted by a judge, and has the potential to result in a judge-ordered term of incarceration that is final, subject to appeal. We thus hold that there is a right to counsel at a resentencing that follows the grant of a motion to correct an illegal sentence under Article 24.

### D. The Circuit Court Erred in Not Inquiring Further Regarding Mr. Smallwood's Lack of Counsel Before Resentencing Him.

Once the motions court determined that Mr. Smallwood's existing sentence was illegal, Mr. Smallwood needed to be resentenced. In resentencing him, the court was "not limited by the strict rules of evidence and [wa]s invested with wide discretion in determining the sentence to be imposed within the authorized statutory limits . . ." *Sanders*, 105 Md. App. at 254 (quoting *Bartholomey*, 267 Md. at 193). Although Mr. Smallwood's first-degree murder conviction carried a statutorily-mandated life sentence, a sentencing judge is empowered to suspend any portion of that life sentence so long as a period of probation is added to the split sentence. Md. Code. Ann., Crim. Law § 2-201(b) (2012 Repl.; 2017 Supp.); Md. Code. Ann., Crim. Proc. § 6-222 (2008 Repl.; 2017 Supp.). The sentencing judge thus had wide discretion at resentencing.[13]

---

[13] The State's contention that a resentencing is unlike an original sentencing because it cannot be the cause of an individual's incarceration—because the individual is already incarcerated and will remain so—is wrong on both ends. First, there are many situations

Moreover, in considering the appropriate sentence, the court was not restricted to the information that was available at the time of the original sentencing, but could have taken into account, for example, Mr. Smallwood's conduct during his 31 years of incarceration, as well as any other factors the court considered relevant. *Jones*, 414 Md. at 694 ("The trial court is charged, therefore, with 'exercising its sentencing discretion' as if the sentence was occurring for the first time.") (quoting *Bartholomey*, 267 Md. at 193); *Sanders*, 105 Md. App. at 256-57. Sentencing judges have "the flexibility . . . to effectuate the goals of sentencing by imposing a sentence that fits both the crime and the criminal." *Twigg*, 447 Md. at 28 (citing *Sanjari v. State*, 981 N.E.2d 578, 583 (Ind. Ct. App. 2013)).

Given the stakes of a resentencing, the amount of discretion available to the resentencing court, and the possibility for error and mistake, the potential utility of counsel is unquestionable. In this case, although the presence of counsel for Mr. Smallwood may not have changed the result at all, it also may have. *See DeWolfe I*, 464 Md. at 429 (stating that "the likelihood that the Commissioner will give full and fair consideration to all facts relevant to the bail determination can only be enhanced by the presence of counsel"). And counsel almost certainly would have challenged the advice given to Mr. Smallwood that he lacked a right of appeal from his new sentence.

---

in which an individual is, and has been, incarcerated at the time of his or her initial sentencing, including where the individual was denied or did not make bail on the charge at issue or where the individual was already incarcerated on a different offense. Second, there are also situations, as here, in which an individual at least theoretically could be released on resentencing, and so the sentencing court's decision to impose a sentence that is longer than time served would actually be the cause of continued incarceration.

In sum, we hold that Mr. Smallwood had a right to counsel at his resentencing both because sentencing is a critical stage of a criminal proceeding and because he had a due process right to counsel at a proceeding in which the fact and length of his future incarceration were at issue. Had Mr. Smallwood had counsel present, resentencing could have proceeded immediately. Because he did not, and in the absence of an appropriate determination on the record that he had knowingly and intelligently waived his right to counsel, the court was required to postpone sentencing until a later date.[14]

We make one further comment for the guidance of the circuit court on remand. The "upper bound" for a new sentence after a prior sentence has been found illegal, for purposes of application of § 12-702(b) of the Courts and Judicial Proceedings Article, is either: (1) "a previous lawful sentence imposed, if any"; or (2) the "resulting legal sentence" after the illegality is removed. *Greco*, 427 Md. at 509. Because "removing" an illegality can result in an increased sentence—if, for example, the original sentence were less than a statutory minimum or, as in *Greco*, the illegality stemmed from failure to impose a period of probation for a split sentence—the cap on a new sentence, in some circumstances, can be higher than the originally-imposed illegal sentence. *State v. Crawley*, 455 Md. 52, 68 (2017) (holding that circuit court acted properly in correcting an illegal sentence by adding

---

[14] During his postconviction hearing, Mr. Smallwood expressed his lack of preparedness to address sentencing issues after the court granted his motion:

> "If I had a lawyer, I would have been better off. I definitely would have been better off because he would have been able to speak for me. I wasn't in no position right then and there. I wasn't expecting to be sentenced right after she just declared my regular sentence illegal."

a period of probation to sentence originally imposed). Here, the only sentence previously imposed was "the term of his natural life less 72 days." The "illegality" alleged by Mr. Smallwood was the purported ambiguity of the phrase "less 72 days." Stripped of that, the original sentence imposed on Mr. Smallwood for his murder conviction was life, with credit for the 72 days he had already served. Thus, the maximum sentence that can be imposed on remand, subject to the provisions of § 12-702(b), is life, with credit for those 72 days and for all of the time he has served since. *See* Crim. Proc. § 6-218(c) (requiring credit for time served upon resentencing); *Parker v. State*, 193 Md. App. 469, 520 (2010) (concluding "that the General Assembly intended for a defendant to receive credit for the time served on a previous sentence that is later vacated").

**SENTENCE FOR MURDER VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR RESENTENCING CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**